PENOYER and LUFF *against* HALLETT.

*Where a vessel is chartered for a voyage out and home, for an entire sum of money, to be paid on her return, her return is a condition precedent to entitle the owner to freight, and if she is lost before commencing the homeward voyage, he can recover neither on the charter party, nor on an implied assumpsit for the freight of the outward voyage: nor if the freighter had accepted the outward cargo, would he be entitled to a pro rata freight.*

THIS was an action of *assumpsit* for the freight of goods laden on board the schooner *Three Sisters*, on a voyage from *New-York* to *St. Bartholomews.* The cause was tried before Mr. J. *Van Ness*, at the *New-York* sittings, in *December*, 1816.

The plaintiff produced in evidence an agreement, or charter party, not under seal, dated the 19th of *July*, 1815, which was as follows :  " I agree to charter of *Robert M. Penoyer* and *Co.* (the plaintiffs,) the schooner *Three Sisters*, Captain *William Reynolds*, of and about one hundred tons, to proceed to *St. Bartholomews*, and also to *St. Kitts*, if required.   If she goes to *St. Kitts*, I agree to be accountable for all damages arising from seizure or detention by the *British* government.  I am to have thirty running lay days to load and unload, and I agree to allow fifteen dollars per day demurrage after that time : to pay for the whole of the vessel, cabin and deck included, for the voyage out and home, fifteen hundred dollars, at the return of the vessel, in current money of our banks.  I agree to pay all port charges, &c. &c."  Signed by the defendant.  " We have chartered to *Abraham S. Hallett*, (the defendant,) the schooner *Three*

*Sisters,* Captain *William Reynolds,* for the voyage above stated, on the terms therein mentioned." Signed by the plaintiffs.

The schooner was loaded by the defendant, who gave a letter of instructions to the master, directing him on his arrival at *St. Bartholomews,* to go on shore and call on *William Cock,* and inquire if he had any directions from *John R. Thurston* respecting the cargo : if not, that he should then anchor in *St. Bartholomews,* without entering vessel or cargo, and write to *Thurston,* at *St. Kitts,* and await his orders. The master accordingly on his arrival at *St. Bartholomews* called on *Cock,* who not having any directions from *Thurston,* he wrote to *Thurston,* but never received any orders from him. On the 29th of *August,* 1815, the vessel still lying at *St. Bartholomews* with her cargo on board, there came on a violent hurricane, by which she was driven on shore, bilged and sunk, and her cargo greatly damaged. The master then called again upon *Cock,* to know what was to be done, and *Cock* told him that he would, under the circumstances of the case, take charge of the cargo ; and he accordingly entered it at the custom house, paid the duties, received it on its being landed, and advertised it for sale at auction. A short time before the sale, *Thurston* arrived at *St. Bartholomews,* attended the sale, and purchased a considerable part of the cargo. It did not appear that *Cock* was the agent of *Thurston,* or that *Thurston* interfered in the disposal of the cargo, otherwise than by buying at the sale.

The judge was decidedly of opinion, that the plaintiffs could not recover ; he, however, permitted them to take a verdict, subject to the opinion of the court, for the amount of freight for the outward voyage as estimated by the jury.

*M. S. Wilkins,* for the plaintiffs. *St. Bartholomews,* under the circumstances, was the port of delivery ; the vessel was not to proceed to *St. Kitts,* unless required ; and she was not required to go there. Then, we say, here was a delivery of the cargo at *St. Bartholomews,* which entitles the plaintiffs to the freight *pro rata.* There was an indispensable necessity for landing the cargo, and *T.,* the agent of the de-

fendant, who arrived a day before the sale, having become the purchaser of it, it is tantamount to a delivery to the defendant himself. There has been no default on the part of the plaintiff or the master; if any damage or loss has arisen, it has been occasioned by inevitable accident. (*Griswolds* v. *N. Y. Ins. Co.* 3 *Johns. Rep.* 321. 328. *Luke* v. *Lyde*, 2 *Burr.* 886. *Beawes L. M.* 87. *Abbott on Ships*, &c. 277. 284. part 3. ch. 7. s. 5. s. 12, 13, 14, 15. *Jeremy's Law of Carriers*, 87.)

Again; the seamen were entitled to their wages at *St. Bartholomews*; (*Lord Raymond.* 639. *Abbott*, 430. part 4. ch. 2. s. 4.) and this must be on the principle that freight has been earned.

*Slosson*, contra. The right of the plaintiffs to recover, in this case, must depend on the contract, and its legal construction. The agreement is to pay for the whole vessel, for the voyage out and home, 1,500 dollars, at the return of the vessel. The freight is entire for an entire voyage, and the return of the vessel to *New-York* is a *condition precedent* to a right to freight. The entire voyage must be performed before any freight is due. *Barker* v. *Cheriot*, (2 *Johns. Rep.* 352.) is a strong case in point.

This is not a case of *pro rata* freight, which is due only where there is a contract for the *transportation of goods*, which, by some intervening and inevitable accident, is dissolved, and the goods are accepted at an intermediate port; there an implied promise is raised to pay freight for the transportation *pro rata*. Here is a contract for the hire of a vessel for an entire voyage, and for a gross sum. But admitting that it was a case of *pro rata* freight; the plaintiffs have not shown themselves entitled to it. There has been no voluntary acceptance by the defendant at the intermediate port. *Cock* was not the agent of the defendant. He interfered from necessity, and acted for the owners. There is no proof that the proceeds ever came to the hands of the defendant. (*Mar. Ins. Co.* v. *U. Ins. Co.* 9 *Johns. Rep.* 190. *Scott* v. *Libby*, 2 *Johns. Rep.* 336. *Osgood* v. *Groning*, 2 *Campb. N. P. Rep.* 466.)

*D. B. Ogden*, in reply. The agreement was to carry a cargo ; but taking it as stated by the other side, it was a contract to go to *St. Bartholomews*, and, if required, to *St. Kitts*, and back to *New-York*. All that the plaintiffs were bound to do, in the first instance, to entitle them to freight, was to go to *St. Bartholomews*. The defendant was to pay all port charges. There were two distinct voyages. The case of *Mackrell* v. *Simond* and *Hankey*, (*Abbott on Ships*, 316. part 3. ch. 7. s. 19.) is in point for the defendant. There was a charter, by the month, for such time as the vessel should be employed in performing a voyage from *London* to *Plymouth* and the island of *G*. and from thence back to *London*. The freight was to be paid at the rate of 110*l*. per month, for the time taken up in performing the voyage, to commence at the date of the charter party, and to end " on the day of the discharge of the homeward cargo, at *London*, and to be paid one-third part thereof on her report inwards at the custom house, *London*, and the remaining two-thirds thereof in two calendar months, next following." After delivering a cargo at *G*. and while on her return to *London*, the ship was lost by tempest. Lord *Mansfield* says, " If the ship be cast away on the coast of *England*, and never arrive at the port of *London*, yet if the goods are saved, freight shall be paid, because the merchant receives advantage from the voyage. This is not expressed by the charter party, but arises out of the equity of the case." In the present case, the 1,500 dollars freight was to *be paid* on the return of the vessel. It is not said that it is to *become due* on the return of the vessel. This case is distinguishable from that of *Barker* v. *Cheriot*. The defendant there covenanted to pay freight, 4,500 dollars, for the *entire voyage*, for which he was to give a note, payable in 60 days *after delivery of the return cargo in the port of New-York*.

SPENCER, J. delivered the opinion of the court. Two questions arise : 1. Could the plaintiff recover on the charter party ? if not, 2, is he entitled to a *pro rata* freight on the outward cargo ?

ALBANY,
August, 1818.

PENOYER
v.
HALLETT.

The case of *Barker* v. *Cheriot*, (2 *Johns. Rep.* 352.) de-cides the first point.   In that case a vessel was chartered for a voyage from *New-York* to *Martinique*, and back to *New-York*, for the entire sum of 4,500 dollars, payable 60 days after the delivery of the return cargo at *New-York*. The outward cargo was delivered at *Martinique*, and while on the return voyage with a cargo, she was captured and carried into *Antigua*, where the cargo was libelled and or-dered to be retained for further proof.   The vessel return-ed to *New-York* without the goods except a few articles left on board.   The goods were afterwards ordered to be re-turned to the claimants, but neither the goods nor proceeds ever came to the hands of the owners or insurers.   The court held, that it was one entire voyage from *New-York* to *Martinique* and back again ; and that as the vessel was cap-tured on her return, and did not deliver the return cargo, no freight was due, notwithstanding the defendant had the benefit of the outward voyage ; because, by the express agreement of the parties, the outward and homeward voy-age were one, and the profit depended on the entire per-formance.   The same principle was recognised in *Scott* v. *Libby and others*, (3 *Johns. Rep.* 340.)

The present case presents an entire contract.   The ves-sel was chartered to proceed from *New-York* to *St. Bartho-lomews*, and, if required, to *St. Kitts*, and back to *New-York ;* and the defendant agreed to pay 1,500 dollars for the vessel for the voyage out and home, on her return to *New-York*. The return of the vessel, therefore, is a condition precedent, and not having been performed, it is impossible to say that the plaintiff can sustain his action on the charter party.

The counsel for the plaintiffs pressed upon the court the case of *Simond & Hankey*, stated in *Abbott*. (318.)   That case differs materially from the present ; and Lord *Mans-field*, in giving his opinion, says, " if there be one entire voyage out and in, and the ship be cast away on the home-ward voyage, no freight is due, no wages are due, because the whole profit is lost, and by express agreement the parties may make the outward and homeward voyage one."   The case of *Byrne* and others v. *Pattinson*, cited by *Abbott*, (319.) is one very analagous to the present, and it received a de-

cision in accordance with that in *Barker* v. *Cheriot*. The case of *Liddard* v. *Lopes*, (10 *East*, 529.) further illustrates the correctness of the decision in *Barker* v. *Cheriot*. In that case *Lord Ellenborough* observed, " the parties have entered into a special contract, by which freight is made payable in one event only, that of a right delivery of the cargo according to the terms of the contract, and that event has not taken place ; there has been no such delivery, and consequently the plaintiff is not entitled to recover; he should have provided in his contract for the emergency which has arisen."

Had the defendant himself accepted the outward cargo at *St. Bartholomews*, it would not have entitled the plaintiff to a *pro rata* freight, because of the entirety of the contract; but in the present case, it does not appear that *Cock*, who caused the cargo to be sold, had any authority to do so; he acted from the necessity of the case.

It is impossible to raise an implied promise to pay the outward freight, on the ground of the labour performed in carrying the defendant's goods, when the carriage of the goods was regulated by a contract, part of which only was performed, and the other part remained unperformed; the entire performance of it being a condition precedent.

Judgment for the defendant.