# The Commercial Bank of Manchester *v.* Nolan *et al.*

Where a bank discounted a note, and shipped cotton for the maker, taking the same as collateral security, and reserved by contract the domestic exchange between New York and Mississippi as compensation for the agency of the bank; held, not to be usury, as the bank took the risk of profit on the exchange, and it did not appear to be a disguise to cover an usurious contract.

The Commercial Bank of Manchester, under that provision of its charter which declares, "it is made capable of buying, receiving, and holding property and estate of whatsoever nature, and the same to alien and dispose of at pleasure," may receive cotton as collateral security, and ship and sell the same.

It is a power incident to every bank of discount, that it should be permitted to secure its loans in any manner not prohibited by its charter, or some public statute.

The general statute law of this state, which declares that "no person or persons whomsoever" shall take more than a certain rate of interest, and on usurious contracts authorizes a recovery of the principal sum only, embraces corporations as well as natural persons.

By the law of this state, when a bank in its discounts exceeds the rate of interest allowed by its charter, but does not transcend the general usury law, the contract is not void for illegality; but the bank forfeits all interest.

A corporation is governed by the existing laws in force at the time of its creation, in the same manner as a natural person, except in so far as such laws are modified and changed by its charter.

When a bank takes a greater rate of interest on a discount than that allowed by its charter, the contract is not void for want of authority, inasmuch as a discount or loan is an act within the scope of the powers of a bank. It would be otherwise in the case of a contract foreign to the objects and powers of the corporation.

Where the contract of a corporation is in part void, and in part legal, the same rule of construction prevails as in the contracts of natural persons; that which is legal will be enforced, if it can be separated from that which is illegal and void.

It seems that when a contract with a corporation is executed, the party who is in the enjoyment of its fruits beyond disturbance, cannot set up as a defence a want of authority in the corporation to make the contract.

*Quere.* As to the effect of usury by a bank where the charter does not prohibit the taking of more than the rate which it allows.

IN ERROR from the circuit court of the county of Yazoo.

The Commercial Bank of Manchester *v.* Nolan *et al.*

The Commercial Bank of Manchester, on the 2nd of January, 1839, discounted a note for the defendants for three thousand dollars, payable twelve months after date, and paid the amount less eight per cent. which was reserved for the interest. At the same time the bank, by contract, received from the defendant, Nolan, fifty bales of cotton, which were shipped to Liverpool for him, with the understanding that he was to be credited with the nett proceeds of the sales of the cotton, including the foreign exchange, at the city of New York. There did not appear to have been any contract as to domestic exchange, other than that which might be inferred from the circular issued by the bank a short time previously, by which it proposed "to make loans predicated upon cotton of fair quality, taking the owner's note at not longer time than twelve months, deducting discount for the time, placing to the credit of the owner the premium of foreign exchange current in New York at the date of sales, as well as interest upon nett proceeds of cotton sold until settlement: shipments to be made to Liverpool."

There was placed upon the note of the defendant a credit for the amount of the proceeds of sale according to the above proposition, but no premium for domestic exchange; that is, for the difference of value in money in New York and in Manchester, where the bank was located. The settlement was made in December, 1839. There was no proof of the rate of exchange at the time of settlement, but there was evidence to show that during the year the rate fluctuated from par for specie to twelve per cent. for Mississippi currency, the time of depression of our currency and of increased rate of exchange being greatest as the year 1839 drew to a close. In 1840 the general suspension of the banks took place. It was in proof that the bank regarded the domestic exchange, if in favor of New York at the time when the returns of sales of cotton were received, as no part of the discount, and as no more than compensation for its trouble and expense.

Upon this state of facts, the court below charged the jury, amongst other things, "that if the bank in this instance took more than the interest allowed by its charter by contract, either express or implied, no matter in what form it may have been taken, that then the contract sued on is usurious and is totally void." A

verdict was found for the defendants, and judgment entered in their favor.

WILKINSON for defendants.

Here, as we shall contend, is proof of a contract (if not express, certainly implied,) which is not authorized by the law which created one of the contracting parties, and which is therefore void in law and irrecoverable. That there was a contract by which the bank was to realize a greater interest and profit than is allowed by its charter, plainly implied and inferrable from what was expressed at the time, who can seriously doubt? This profit consisted in the reservation of the domestic exchange. It was not necessary that the reservation of this domestic exchange by the bank should have been expressly agreed upon, it is enough if such was the understanding of the parties. In this case the bank distinctly stipulated what it would allow to the shipper of the cotton, to wit, the sum which should be realized in Liverpool by the sales, together with the foreign exchange; is it not reasonably inferrable that the bank was to retain the balance, that is to say, the domestic exchange? The bank prescribed its terms to the borrower, and why this circumstantial and cautious arrangement about shipping the cotton abroad, and the drawing of bills from so many different points, but to enable the bank to realize this profit, over and above what had been discounted from the face of the note. But the fact of taking this domestic exchange by the bank is alone strong evidence of a contract to take. See Firemen's Insurance Company *v.* Ely, 2 Cowen, 705. And it is clear from the proof that the bank did take and appropriate it to its own use. It is true, that the bank did occasionally vary the form and manner of appropriation, as if anxious to escape the vigilant eye of the law, which is said to look with a keener ken, and to scrutinize with a more anxious jealousy, into transactions blemished with usury, than with any other taint.

At one time it drew against the fund in New York, selling the exchange for such profit as the market afforded; at another time it is in proof that the bank paid its own debts in New York with this fund, thus saving the expense of remittance, and realizing the benefit of the exchange in this way; at another time it purchased

specie in New York with this fund, says the proof, which means nothing more than that the bank ordered the specie which was realized in New York by the sale of sterling bills to be shipped to Manchester, to prop, I suppose, its own ricketty and staggering credit; an arrangement about equal in ingenuity, foresight and profit, to either of the others.

But in some way or other the domestic exchange arising from this fund was taken, and the fact of taking is alone evidence of a corrupt and usurious contract to take. However, even if this, as a feature of the contract, could not have been inferred by the jury, it would have been expressly proved on a second trial, as is manifest from the affidavits of Pope and Moore, and an opportunity should have been afforded the defendants of doing so by the award of a new trial of the cause. Assuming then, as fairly deducible from the proof, that there was a contract of the character contended for, we now proceed to show it is void.

As a corporation is a franchise possessed by one or more individuals, 2 Kent Com. 266, and a franchise, a privilege or authority vested in one or more persons by special statute, Tucker's Com. vol. 1, book 2, page 11, it would seem to follow that its charter is its letter of authority and the limit of its powers. This is accordingly the doctrine which the courts have uniformly held. 2 Cranch 127; 4 Wheaton, 636; 4 Peters, 152; Gaither *v.* the Corporation of Georgetown, 1 Peters, 44. This obvious doctrine of the supreme court of the United States has been repeated in the decisions of the state courts. 5 Conn. 560; 15 Johnson, 358; 3 Pickering, 232; 1 Stewart's Ala. Reports, 299. As a general principle of law it is supposed to be effectually and forever fortified against successful controversy by repeated and almost innumerable precedents, nor is there a decision or a *dictum* which prevents a successful application of it to the case at bar. It is true that the judge in pronouncing his opinion in the case of The Bank of Utica *v.* Wager, 2 Cowen, 763, supposes that if a bank were to reserve upon its loans a greater interest than its charter authorized, yet a less amount than that forbidden by the usury laws, it would not or might not (for this portion of his opinion is rather matter of inference than of perspicuous and plain expression) avoid the contract of loan. This question, however,

as is remarked by the chief justice of this court in the case of The Planters' Bank *v.* Snodgrass, was not before the court, and the remark was but incidentally made. And if the question had been before the court it is not analogous to the case at bar; for here it is plain from the evidence which is embodied in the bill of exceptions, that the amount of interest reserved by the bank did exceed that which is authorized by the usury law of Mississippi. The first and most respectable tribunal which was called upon to pronounce its judgment upon the exact point presented by this record, was the supreme court of the United States, Bank of the United States *v.* Owens *et al.* 2 Peters, 535, and the language of that opinion is of such a character as to relieve this court of all embarrassment or difficulty on this branch of the case. "Whether," says the court, "if the plea does make out a case of violation of a provision of the charter, the notes sued on are void in law, so that no recovery can be had thereon in this suit. To understand the gist of this question, it is necessary to observe, that although the act of incorporation forbids the taking of a greater interest than six per cent. it does not declare void any contract reserving a greater sum than is permitted. The question is, whether such contracts are void in law upon general principles?" And it is then expressly said that they are void upon general principles. Now, what is there in this case to distinguish it from the case at bar? It is thought that in the facts there is similitude enough to subject them to the government of the same principles.

It is said by the counsel for the bank in this case, and by Mr. Sergeant in his argument for the Bank of the United States in the case in 2 Peters, that when the contract is avoided *in toto*, it is always in consequence of an express provision in the usury laws to that effect by the legislature of the state where the bank is located. That such is the law of Kentucky, the state in which the case arose which is reported in 2 Peters; that such is not the law of Mississippi, and that therefore the laws are not in point with each other. This reasoning might be good if the facts were not mistaken. It is true that the statutes of Kentucky do now avoid a usurious contract *in toto.* But such was not the statute law of Kentucky at the time the contract was entered into, out of which the case of the bank *v.* Owens originated. At that time

The Commercial Bank of Manchester *v.* Nolan *et al.*

the interest only of the debt was avoided upon a plea of usury. It was since that contract was entered into, and probably while that case was pending, that the forfeiture was extended by the legislature of Kentucky to both principal and interest; so that the efficacy of this case as a precedent cannot be avoided on this score. That this change of the Kentucky statute did in no wise affect contracts which had been entered into before the change, is a plain proposition of law, and has been explicitly settled by the supreme court of Kentucky in reference to this very subject. See 1 J. J. Marshall, 277 ; see as to the time of the change of the usury law, 2 Stat. of Ky. 852, 856.

The principle is, moreover, recognized by our own supreme court in the case of Davis *v.* Minor *et ux.*, 1 How. 184. The applicability of the case in 2 Peters as authority then cannot be denied, and the counsel of the bank must be driven to controvert the law of that case. This, then, is the position which they will be forced to assume—that although the amount contracted for and received by the Bank of Manchester did exceed the rate of interest authorized by the law of this state, yet as the statute regulating interest had affixed and declared the penalty consequent upon a violation of it to be only a forfeiture of the interest, the forfeiture cannot by construction be extended further. Now, the recognition of this as a principle of law, it seems to me, would lead to evident absurdity. For if the usury statutes alone create the offence, declaring the contract legal until more than the lawful rate of interest is taken, then if *less* than the lawful rate is taken, but *more* than the charter of the bank authorizes, such a contract would upon such reasoning be legal and valid. For example: if the charter of the bank allow six, and the statute of usury eight per cent. to be taken, then the taking by the bank of an amount greater than six, and less than eight per cent. would be no offence at all, according to the logic of the counsel for the bank, because the provisions of the usury law will not have been violated. If it be objected that the case that I have put, although no violation of the usury law, would yet be a violation of the charter, and that not being embraced by the usury law, it would upon general principles be void, it would involve a still greater absurdity. For according to this doctrine, if the bank had taken seven and a half

per cent. discount upon its loans, it would have forfeited the whole, both principal and interest, as the charter authorizes only seven to be taken; but as it has taken more than eight per cent., it forfeits the interest only, this being embraced within the prohibitions of the usury laws. In other words, if the bank violate her charter without infringing the statute against usury, the contract of loan is void in toto; but if she violate both her charter and the statute, the contract is void only for the usurious excess! The truth is, that this view of the subject is pregnant with difficulty, and cannot be sustained by argument. Whereas, if you regard the contract of loan as void upon principle, and lay (as the supreme court of the United States did) the usury statutes out of view altogether, your path is apparent, and full of light.

We will now advert for a moment to the facts of this case, and see where the error lies of which we complain. It will appear from the record, that in January, 1839, the plaintiff in error executed the note sued on to the bank, with the understanding that its prompt payment was to be secured by a pledge of cotton; that the cotton was to be shipped by the bank to Liverpool, and sterling bills of exchange drawn against the fund, and sold in the city of New York, and that the note of the plaintiffs in error was to be credited with the amount which should be realized in New York; that the board of directors being advised by their correspondent in New York of the amount realized, did credit the note (which all the time remained in the bank at Manchester) with the said proceeds, and that this was done by virtue, and in pursuance of a contract between the parties, made at the time the note was executed.

Now, without a particle more of proof, it is plain that this contract was usurious, provided the plaintiffs in error had been able to make it appear to the jury who tried the cause, that money in New York was, at the time said proceeds were realized as above stated, worth more than the same amount at the counter of the bank, which is the place where the note of the shippers of the cotton was payable; and it was to make this proof that the first question was asked, as stated in page 10 of the record, and which was ruled out by the circuit court. This I insist is palpable error. On such a note the bank is permitted by its charter to take seven

per cent. discount, and no more.  If by contract it took more, whether in money or money's worth, the contract is a nullity.

The difference in value between money at two given points, at any given time, is what is meant by exchange.  This exchange, though intangible, invisible, not subject to any of the senses, is nevertheless a commodity of value, as much as a horse or an ox, or any other article of property.

If A has a thousand dollars in New York, and B a thousand dollars in Manchester, and B has occasion to make a payment in New York, or to visit that city and use that amount there, and executes his note to A for fifty or a hundred dollars to make the exchange with him, the contract of exchange is a lawful one, and B cannot avoid payment of his note for fifty or a hundred dollars upon the ground of want of consideration, provided exchange was the least in favor of New York against Manchester at the time of the contract.

Now, this is what we wished to do: to prove that exchange *was* in favor of New York as against Manchester at the time the proceeds of the cotton were realized there; and that, from the course of trade and the causes which govern it, this has uniformly been the case; and that the bank must have contracted with a view to this profit: yet this is the proof which the circuit court ruled out.  That profit, in the shape of exchange, above the legal rate of interest, has been adjudged usurious, and by high authority, the court is referred to the case of Andrews *v.* Pond, 13 Peters, 76.  The court, in that case, say, "Although the transaction appears, on the face of it, free from usury, yet if the sum charged as exchange, or any part of it, was intended as a cover for usurious interest, the form in which it was done, and the name under which it was taken, will not protect it from the consequences of usurious agreements; and, if the fact be established, it must be dealt with in the same manner as if the usury was expressly contracted for in the bill itself.  It is a question of interest, and in order to enable the jury to decide whether usury was concealed under the name of exchange, evidence on both sides ought to have been admitted which tended to show the usual rate of exchange between New York and Mobile, where the bill was negotiated."  Thus is the law settled by the highest tribunal known to the

country, yet this is the sort of evidence which the circuit court rejected.

Furthermore, there had been evidence detailed to the jury conducing to show that the money with which the note sued on was discounted, consisted of the post notes of the bank, and a witness was asked by the counsel of defendants if the post notes of the bank were at par or at a discount at the time the note was negotiated; but the question was objected to, and the objection sustained by the court. This also was error, according to the decision in the case of Gaither *v.* The Farmers' and Mechanics' Bank of Georgetown, 1 Pet. 44; for, by this decision, a contract between a bank and its customer to receive, upon a discount of negotiable paper, the notes of the bank not due on demand, if such notes are depreciated in the least, is absolutely void.

It may be argued, perhaps, that even if the court had permitted the question, which was first objected to by defendants' counsel, to be answered, still the jury may not have been satisfied that there was a reservation by the bank, at the time the contract was made, of the domestic exchange. But, if so, it was clearly error in the court to refuse a new trial for the purpose of enabling the defendants to adduce their proof of that fact; proof discovered since the trial of the cause, and which would have established the reservation of the domestic exchange beyond a doubt in the minds of the jury, as is evident from the affidavits of Pope (a director of the bank at the time this money was loaned) and of Moore, who was present when the contract was made, and who attended to its terms. If there was not, in the opinion of the judge, evidence enough to satisfy the jury upon this point, then he erred, as above stated, in refusing a new trial. And if, in his opinion, there was evidence enough to satisfy them, then their finding against it was wrong, and a new trial should have been granted for this cause. But the capital error presented by the record, is the refusal of the court to permit proof of the market rate of exchange between Manchester and New York, since in this way alone could the usury have been established.

We consider this contract as void. By the dictates of reason, and upon plain legal principles, we contend that it is in law a nullity. We insist that a corporation can do no one thing what-

The Commercial Bank of Manchester *v.* Nolan *et al.*

ever, the least important which the mind can conceive of, which is not expressly authorized by its charter, or which is not indispensably necessary to the proper accomplishment of something which is authorized by its charter. We adopt the language of the chief justice of this court in delivering his opinion in another case, and maintain that if the unlawful receipt of interest by a bank amount to "the twentieth part of one poor scruple," the act is void, and the whole contract a nullity; for, if it may do one illegal thing, it may do any illegal thing. It would be far more potent than any citizen, and paramount to the law itself. We insist that a corporation, a mere artificial person, made by the government, and made for purposes distinct and specific, and clothed with powers as plainly limited by its charter as a letter of attorney can limit any agent, cannot step beyond that charter to do any thing which will have vitality; and that whatever is in this way done by it is void, as much so as the forced action of an inanimate body.

It is not because this contract is usurious that it is void; for if the charter had authorized the taking of twelve per cent. by the bank, and it had taken eleven, the contract assuredly would not have been void, and yet it would be more than would be authorized by our statute of usury. It happens in this case to be both usurious and void, but it is not void because of the usury. It should be considered in a point of view wholly disconnected from the law of usury, and I am at a loss to conceive how or why the statute of usury has heretofore been obtruded into every discussion that has been had of kindred character with this. It certainly affords us no light either by its analogies or the precedents it has furnished, but on the contrary tends in my mind to involve the subject in obscurity and doubt. It is because it is a breach of the charter that this contract is to be considered as void, and not because it is a violation of the usury law. For it is plain that it might be usurious, and yet not void; and it might also be void, and yet not usurious. In this case, however, it happens to be both. Take this view of the subject, and the adversary position which I controverted in another part of my argument falls to the ground, and it becomes alike unimportant in the consideration of this subject whether the Mississippi usury law annuls in whole or in part the

44*

usurious contract.  The contract is void simply on the ground that the public policy is paramount to all considerations of private interest; and when it is infringed upon, the ethics of mere individual controversy is to be laid entirely out of view.

In the view of the subject which I have taken I am not forestalled by any adjudged precedent.  The case of Snodgrass *v.* the Planters' Bank does not raise the question; and this is confessed both in the opinion pronounced by the court, and in that of the dissenting judge.  It is new, so far as this court is concerned; but it is settled in our favor by the cases referred to 8 O. Rep. 279; 2 Peters, 253;  3 Barn. & Ald. 1;  7 Wend. 276;  8 Gill & Johnson. Nor have I considered the intention of the bank to take usurious interest, or to do what would amount to a violation of its charter, having debated the subject upon the ground that the contract sued on, if in fact an infringement of the charter of the bank, is void for that cause alone, and aside from any purpose of the directory to violate it.  I will add, however, that I might with plausibility press the other view of it, and insist that there is enough in the record from which to infer an intention on the part of the bank to do what so clearly amounts to both a violation of the usury statute and of its charter; and at any rate, there would have been, if the proof we repeatedly sought to introduce had not been improperly kept from the jury.

MILES on the same side.

The reservation of "domestic exchange" by the bank, in addition to the discount taken at the time the money was advanced, would of itself be conclusive evidence of an intent on the part of the bank to evade the restriction of her charter, provided the fund produced by this exchange had been paid by Nolan to the bank at the time the contract was entered into.  2 Cow. Rep. 664, 705. Does the fact of its subsequent reception alter the law ?  We contend that it does not.  4 Durn. & East's Rep. 353.

It will be recollected that the bank in making this contract stipulated in express terms to allow Nolan the " foreign exchange " only.  The very terms of the contract show an intention on the part of the bank, to realize by this flimsey financial evasion a greater rate of interest than is allowed by her charter.  If such

was not the intention of the bank, why limit Nolan's profits to the "foreign exchange" only? Had the bank intended what was fair; had it been her object to accommodate the planting interest, by transmuting herself into a commission-house, she would have allowed her shippers the benefit of all exchange. The fact then, of agreeing to allow the "foreign exchange" only, with a view of realizing the profits of the "domestic exchange" in addition to the discount reserved, infects the contract with the poison of usury. And the intent to take the profits of the domestic exchange being simultaneous with the contract, their subsequent reception relates back to the original contract, and taints it in the same manner, and to the same extent, as though the same sum had been received by the bank in the first instance, as part consideration for the loan or advance.

It may not be said that the domestic exchange would not more than compensate the bank for her trouble, as the shipper of the cotton. For it is expressly proved that all the expenses of the shipment were to be deducted from the amount of sales, and to be paid by the shipper ; and the bank positively agreed to charge nothing for her trouble. So that she could have had no other motive in reserving the domestic exchange, than that of illegal gain.

That the bank contracted with reference to the difference of exchange between New-York and Yazoo City, is manifest from the proof. Exchange has always been in favor of New-York and against Yazoo City: varying from one to twenty per cent. With a full knowledge of this fact, the bank stipulated to place the nett proceeds of the cotton at New-York, and credit Nolan with that amount, *plus* the "foreign exchange," she then having the liberty to draw against that fund, and realize a profit varying from one to twenty per cent., which was so much clear gain to the bank in addition to the discount. It has been held by the supreme court of the United States, that usury may be committed as well by contracting for illegal interest in the shape of exchange, as by a direct stipulation for excessive interest. 13 Peters Rep. 76; Pond *v.* Andrews.

If the contract is usurious, it is void *in toto.* The contract being made by a corporation, the usury law of the state, which

relates only to natural persons, does not apply to this case; and upon general principles the contract is a nullity. 2 Peters' Rep. 538; 8 Ohio Rep. 257 to 289; opinion of chief justice Sharkey, 4 Howard, 646. The court is also referred to the following authorities, which sustain the positions contended for. Cowper's Rep. 770; 4 East, 146; 2 Camp. 348; Ang. & Ames, 6, 139; 8 Cow. 20; 5 Cow. 560; 3 Bos. & Pull. 154; 4 Rand. 406–11; 17 Vesey, 47; 1 Call, 63; 5 Moore, 571–88; 10 Wend. 266; 15 John. 358; 1 Wend. 56.

A position ancillary to the more prominent one in this cause is, that the bank cannot recover because the contract was made in violation of her charter (usury thrown aside.) A careful inspection of her charter will furnish a satisfactory elucidation of this position. By the 4th section the bank is authorized to purchase, hold and receive property of all kinds whatsoever; and by the 9th section she is authorized to secure her loans by pledges of real estate that are made for periods of more than one year. The cotton taken by the bank from Nolan was not purchased; nor was it held or received under a contract for purchase as authorized by the 4th section. The money was advanced and the cotton received by the bank, as shown by the terms of the contract, as a pledge to secure the money advanced. The 9th section only permits pledges of real estate to be taken, and that only when the loan is made for more than a year. And these are the only sections in the charter under which the bank can assert a right to make such a contract as the one sued on. The powers conferred by the sections quoted do not authorize but seem to negative the right of the bank to make such a contract.

If, then, there be no express power in the charter by virtue of which this contract was entered into, or if not entered into under an incidental power indispensably necessary for carrying out the expressly delegated powers, it is utterly void, and no recovery can be had. 8 John. Rep. 422; 3 B. & A. Rep. 9–12; 7 Cow. Rep. 462; Ang. & Ames, 59, 60, 139; 4 Wheaton Rep. 518; 15 John. Rep. 383; 5 Taunt. Rep. 792; 19 John. Rep. 1; 4 Peters Rep. 168; 2 Cranch Rep. 127; 3 Pickering Rep. 232; 8 Ohio Rep. 288, 289; 8 Gill & John. Rep. 248; 22 Eng. Com. Law Rep. 185; 2 Barn. & Adol. Rep. 792; 11 Peters Rep. 420, 544–5–6.

The Commercial Bank of Manchester *v*. Nolan *et al.*

Mr. Justice CLAYTON stated the case and delivered the opinion of the court.

Two points have been presented to us in argument growing out of the charge:

1. Whether the contract sued on is affected with usury.

2. If so, whether it is wholly void, or only to the extent of the interest.

In regard to the first question, the existence of usury in the transaction, it is not explained in the charge with sufficient precision what is meant by usury. It is certainly true in regard to this point, that the form of the contract, or the division of the contract into distinct parts, can make no difference. The law will not permit any device to defeat its provisions, where the consummation of usury is really intended, and the departure from the ordinary form of contract is meant merely as a veil to disguise the real features of the transaction. But it is well settled that in a case like this, where, besides the contract of loan there is also a contract by way of pledge, or mortgage, or collateral security as accessary to the payment of the debt which is the principal, that some fair and just compensation for labor, trouble and expense about the accessary thing, may be legally stipulated for. Comyn on Usury, 46; Trotter *v*. Curtis, 19 John. 160; 2 Cowen, 769. This stipulation, however, must not be resorted to as a cover for usury. The matter then becomes a question of fact, whether the taking of the cotton under an agreement to account for its nett proceeds in New York, without the addition of domestic exchange, was a means adopted to conceal the usurious intention, or was a fair contract, the bank taking the risk of profit in that way as a compensation for its trouble. Again, in contracts of loan, if there is a hazard that the creditor may receive less than his principal, it is no usury, 8 Leigh, 248. 1 J. J. Marshall, 596. But the hazard must not be merely colorable. Pike *v*. Ledwell, 5 Esp. Rep. 164. In this case if at the time of payment the rate of exchange had been in favor of Manchester against New York, the bank would have been loser to that extent. In the fluctuations of the balance of trade mutations in the rate of exchange between two points are by no means unfrequent. If it was not fixed and certain that the bank would make in this matter of exchange,

and if in any contingency not so remote as to make it a mere disguise for unlawful gain, a part of the principal might be lost, the agreement was not usurious. Both these principles should have been explained in the charge to the jury, and their verdict might then have rested on correct grounds.

The contract in this instance in regard to the cotton is not illegal, according to any principles which can be brought to bear upon it. One of the attributes of a corporation at common law is, "that it may take and grant property, contract obligations, sue and be sued by its corporate name, in the same manner as an individual." 2 Kent, 278; Angell & Ames, 59. Unless specially restrained by their charters, or by statute, they have these powers, neither limited as to objects nor circumscribed as to quantity. Ibid, 104. These remarks apply solely to the acquisition and disposition of property; corporate powers in other respects are more strictly construed. The charter of this bank, in that particular, is very ample; "it is made capable of buying, receiving, and holding property and estate of whatsoever nature, and the same to alien and dispose of at pleasure." Terms more comprehensive could scarcely be employed. It is, moreover, a power necessarily incident to every bank of discount, that it should be permitted to secure its loans in any manner not prohibited by its charter, or some public statute. Without such power the privilege of banking would be a poor boon. 2 Ala. 472. It will scarcely be doubted that the bank might take a deed of trust or mortgage on slaves or other personalty to secure a debt due to it. The almost daily occurrence of such acts is a strong evidence of their legality, and such contracts have been often enforced in the courts of the country.

There is but one restriction [in the charter of this bank; that which is contained in the ninth section, by which it is enacted, "that the company shall have power to secure their loans for periods of more than a year by pledges of real estate, but in no case shall purchase the real estate so pledged." With this single exception, there is no prohibition upon it to secure its loans in any way it may deem advisable. "Every corporation, unless expressly forbidden, has, by implication of law, the power to do such acts as are essential to its existence, or necessary to enable it to perform its functions." Banks & Hines *v.* The Bank of the State of

Alabama, 2 Ala. Rep. 472; 14 Peters, 129. Surely nothing is more essential to the existence of a bank for any useful purpose, than a power to secure the payment of its debts. A bank, having by its charter power to convey real estate, may incumber it by mortgage. Jackson *v.* Brown, 5 Wen. 590. It follows as a consequence, that a power to purchase includes a power to accept a mortgage. This precise point has been before the supreme courts of two of our sister states, in cases in which the charters of the banks contained, so far as the reports show, no such clause as that already cited in this case; yet both courts, upon general principles, in the absence of positive prohibition, held the contracts valid. 2 Ala. 472, as above; Deloach *v.* Real Estate Bank of Arkansas *et al.* 18 Louisiana, 447.

Having shown that there is nothing in the agreement as to the cotton which affects the validity of this contract, and that the charge of the court in regard to what constitutes usury was too broad and general, I come next to inquire, whether if the existence of usury be established, the contract thereby becomes wholly void.

The loan in this case was for twelve months, and the only clause in the charter which can affect it is in these words: "the rate of discount which said company is authorized to take on paper having twelve months or longer to run, is hereby declared to be eight per cent. per annum." There is no prohibition to take more, nor penalty for excess in this particular. Our statute, upon the subject of interest, in substance, enacts, "that no person or persons whomsoever, shall take directly or indirectly for any contract, more than eight dollars for the forbearance or giving day of payment of one hundred dollars for one year, and if more be taken or received in or by any such contract, no interest or premium whatever shall be allowed or recovered, but the principal sum only." From the terms of this act it is manifest that if a natural person had been the plaintiff in this case, the charge would be erroneous. Is a different principle applicable to a bank, or in other words, are banks included in the word persons under the general provisions of the statute? In the various definitions by legal writers of the term corporation, it is often called a person. Thus in Angel & Ames, page 7, it is said, that when any number

of persons are consolidated and united into a corporation, they are then considered as one person. It is often called an artificial person. Angel & Ames, 58; 2 Ran. 472. Chief Justice Marshall calls it an artificial being; and 2 Peters, 323, Bank of Kentucky *v.* Wister *et al.* it is called a metaphysical person. It has been frequently the subject of adjudication, whether corporations were embraced in the general term citizens, persons, inhabitants, and the decisions hold that they are. 2 Coke Inst. 703; People *v.* Utica Ins. Co. 15 Johns. 332; Mott *v.* Hicks; 1 Cowen, 513; Maine Bank *v.* Butts, 9 Mass. 48; Bank of the Valley *v.* Stribling, 5 Ran.; 11 Wh. 412; 12 Peters, 135; 13 Peters, 588; 2 Hill, 267. This list might be much extended, and the cases, so far as I have seen, all hold that corporations are included in the word persons in a general statute. It has been repeatedly so decided in reference to the statutes of usury, in cases where banks were resisting, as well as seeking that application of the laws. The cases are very numerous where the usury laws have been applied to the transactions of banks *sub silentio*, without question on either side. Bank of Burlington *v.* Durkee, 1 Ver. 404; Ibid, 430; 12 Pick. 586; United States Bank *v.* Wagoner *et at.* 9 Peters; 1 Peters, 43.

An act of incorporation never attempts to embody all the rules and principles which are to govern the institution it creates. Of necessity it has reference to the existing laws of the state in which it is passed. Those laws apply as forcibly to an artificial person at the time of its creation as to a natural person at birth. The one is governed by them except so far as exempted by its charter, just as the other is clothed with them at the first moment of existence. A charter containing provisions contrary to the constitution would be void, precisely as any other legislative act. This shows that the general laws in force at the time of its creation bear upon it, except so far as its charter may take it out of their influence. Angell & Ames, 142; McCarty *v.* Orphan Asylum Society, 9 Cowen, 463. The only objection urged in argument to this is, that it would tend to divest vested rights. The principle as here laid down has no such tendency, because it is restricted to the laws in force at the time the charter is enacted. But corporations are likewise subject to subsequent legislative action. A state law may

The Commercial Bank of Manchester *v.* Nolan *et al.*

be retrospective in its character, and may divest vested rights, and yet not violate the constitution, unless it also impairs the obligation of a contract. Charles River Bridge *v.* Warren Bridge, 11 Pet. 420; Angell & Ames, 142.

Indeed the argument for the defendant in error is founded upon the assumption, that this corporation is subject to the general law of the land, for it demands the application of a common law principle to this contract, in order to make it void. The common law can only be in force, in this state, to the extent that it remains unchanged by statute. The common law rule against usury, at the time of the enactment of this bank charter, was so far modified that the contract was only avoided as to the interest. The common law rule making the contract wholly void, was to this extent repealed by necessary implication; how then can its principle be invoked to operate on this contract.

By the words of the charter as above set forth, the bank, in regard to loans for twelve months, is not restrained by express words from taking more than eight per cent. there is neither any prohibition by way of penalty, it follows that there is no restriction at all unless it be an implied one, or unless we apply the general statute of interest to this bank. This would be right, and if the bank has contracted for more interest than is allowed by its charter it can only recover the principal sum lent.

The case most strongly urged against this conclusion is that of the Bank of the United States *v.* Owen, 2 Peters, 527. It has been pressed upon us with so much earnestness in support of the position, that the contract if infected with usury is utterly void, that we feel it a duty to examine it, and to show why we cannot concur in it. The first step in this process is to ascertain precisely what was in question, and what was decided in that case upon this point. In reference to this matter the court itself says, "the question here has relation exclusively to the legal effect of a violation of the provision in the charter on the subject of interest, and does not bring in question the operation of the statute of usury of Kentucky upon the validity of this contract. To understand the gist of the question, it is necessary to observe, that although the act of incorporation forbids the taking of more than six per cent. it does not declare void any contract

The Commercial Bank of Manchester v. Nolan et al.

reserving a greater sum than is permitted. Most, if not all the acts passed in England and in the States on the same subject, declare such contracts usurious and void.

"The question then is, whether such contracts are void in law, upon general principles. The answer would seem to be plain and obvious, that no court of justice can in its nature be made the handmaid of iniquity. Courts are instituted to carry into effect the laws of a country; how can they then become auxiliary to the consummation of violations of law?" The length of this extract will be excused, because it is necessary to the distinct understanding of the decision.

Here it is expressly stated that the decision is to turn alone upon the construction of the charter of that bank, without reference to the bearing of any general statute upon the subject of interest. Why it was so considered does not appear; perhaps it was because the court then thought there was no general statute which could bear upon it, or which would vary the result. The same court had previously decided in more than one instance, that the Bank of the United States was governed by the law of Congress alone, and was subject to no other legislation. McCullough v. State of Maryland, 4 Wh.; 9 Wh. 859. Now there was no act of Congress other than the charter, on the subject of interest, which could bear on the point, and the court in the outset disclaims any reference to the act of Kentucky, and confines its attention exclusively to the charter. We shall see in the further progress of this opinion, that its course has not been uniform on this point. The words of the charter are, "nor shall said bank take more than at the rate of six per centum per annum for or upon its loans or discounts." By the demurrer it was admitted that the bank had "unlawfully, usuriously, and corruptly" stipulated for more than the legal rate of interest. And the court decided that the contract was void upon general principles; "and that there could be no legal remedy for that which is itself illegal." With this general conclusion we have no concern; I shall proceed to point out the difference between that case and the one before this court. First, then, the charter of the Commercial Bank of Manchester does not in terms declare that it shall not take more than eight per cent. discount; the inference that the taking of more is prohibited, is

mere deduction, unless it be drawn from the general statute of this state on the subject of interest.  Next, there is no act of Congress which permitted a recovery of the principal sum lent, where there had been usury, and the case was left to the general common law doctrine.  Had there been an act of Congress similar to our sta-tute, we believe a different decision would have been made, else why do they so carefully say that they cannot consider of the effect of the statute of Kentucky.

But there is still stronger evidence on this point.  The case of the Bank *v.* Owens in 2 Peters, came up on a certificate of division of opinion of the judges of the circuit court ; when the cause was remanded, the demurrer was withdrawn and replications filed, a jury, verdict, judgment for defendants and another appeal.  The case of the Bank of the United States *v.* Wagoner and others, 9 Peters, 378, is the same case and between the same parties, the order of names only being reversed, with that of the Bank *v.* Owens, in 2 Peters.  In delivering its opinion in the case in 9 Peters, it will be seen that the court departs from the course pur-sued in 2 Peters, and takes the usury act of Kentucky into its consideration.  It says, " it is in reference to the usury act of Ken-tucky, and this article of the bank charter, that the various instruc-tions asked or given are to be examined."  The rule of construc-tion adopted in reference to the usury laws, is there stated.  They treat the question throughout as one which is influenced by the statute of usury, apply the same rules of construction, and under this view of the subject, they again reverse the case, and send it back with instructions strongly calculated to insure recovery upon the part of the bank.  Hence it seems that the court receded from the position taken in the case of Owens, that it was to be consid-ered without reference to the general law of usury, and took a broader and juster view.

But to test still farther the claims which that case has on our regard, as authority, let us look to what the same court said on a previous occasion, as to the invalidity of a contract on the ground of usury.  In the case of De Wolf *v.* Johnson, 10 Wh., they say, " under a law which forbids the taking of usurious interest, but does not avoid the securities, a court of equity will not refuse its aid to recover the principal."  Why should a court of law under

precisely the same circumstances, refuse to become the hand-maid of iniquity, in the language of the case of Owens, and turn the party from its door. A court of equity is usually esteemed purer than any other tribunal, and much more vigorous in excluding claims on the score of iniquity than a court of law.

Again, in the case of Lloyd *v.* Scott, 4 Peters, 205, the same court says " that usury is now only considered an illegal or immoral act, because it is prohibited by law." From this it follows inevitably that the measure of its illegality, is the extent of the prohibition by law, and as in this state there is no forfeiture by statute except of the interest, the party has a clear right to recover the principal.

Once more : in the case of Fleckner *v.* the Bank of the United States, 8 Wh., the court says: " The statutes of the states as well as of England, contain an express provision, that usurious contracts shall be utterly void, and without such an enactment, the contract would be valid, at least in respect to persons who were strangers to the usury. The taking of interest by the bank beyond the sum authorized by the charter would be a violation, for which a remedy might be applied by the government, but as the act of congress does not declare it shall avoid the contract, it is not perceived how the defendant could avail himself of this ground to defeat a recovery. 8 Whe. 355. The demurrer in the case of Owens was probably filed because of this decision in the case of Fleckner, that such defence was not admissible, under the same charter ; and after the cause went back, was again tried, and again came to the supreme court, though at that time upon replication, they say they deliberately adhere to the decision in the case of Fleckner.

In our view of the case in 2 Peters, it does not sustain the position of counsel, that the contract in the case before us is void ; it could only be authority for that position in a state of case, in which the contract was left unaffected by any statute such as ours. Every decision cited by the court occurred between individuals, thus showing that it was not intended to draw any distinction as to the validity of the contract, between a natural and an artificial person. But if it does go the length contended for, we do not believe that it is in accordance with either the previous or subse-

quent decisions of the same august tribunal, and the convictions of our own judgment cannot be surrendered to its reasoning or authority.

The case of the Bank of Chillicothe *v.* Swayne *et al.*, 8 Ohio, 257, was likewise urged as an authority for the same position, but does not sustain it. On the contrary the court reviews the whole train of previous decisions in that state, and in Pennsylvania, on the subject of usury, and in conclusion says, "upon the whole we entertain the opinion that the contract is not void, as being against the general law of the state upon the subject of interest." The judgment in that case was for the defendants upon another point to be hereafter considered more at large, and that point cannot be more concisely stated, than in the language of the court itself. " This contract is void, not because the rate of interest is greater than the rate allowed by the general law of the land, but because it is such a contract as the plaintiffs had no power or capacity to make."

The same question arose in the Philadelphia Loan Company *v.* Towner, 13 Conn. 249. It was there held that the bank was on the same footing with individuals, as to usurious contracts.

Lyon *v.* State Bank of Alabama, 1 Stewart, 468, is an express authority, that where a bank exceeds the rate of interest allowed by its charter, but does not transcend the general usury law, the contract is not usurious, or otherwise void for illegality. In this conclusion we concur.

It is insisted, lastly, that if more interest is reserved than is allowed by the charter, the contract is void, because of want of capacity in the corporation to make it.

The rules for the construction of corporate powers have been frequently laid down; perhaps there is none more just, comprehensive and applicable than that to be found in Ang. & Am. 140, adopted in 8 Gill & John. 319. "In deciding whether a corporation can make a particular contract, we are to consider, in the first place, whether its charter, or some statute binding upon it, forbids or permits it to make such contract; and if the charter and valid statutory law are silent upon the subject, in the second place, whether a power to make such a contract may not be implied on the part of the corporation, as directly or incidentally

45*

necessary, to enable it to fulfil the purpose of its existence, or whether the contract is entirely foreign to that purpose."

The powers to loan money, to issue bills and notes, to accept securities, and to receive payment, are necessary to the existence of every banking institution. Without them it could not conduct its business, and their enumeration is but an unfolding of the idea of what is implied by the term bank. When it does any of these things, it is strictly within the bounds of its powers; and the act, so far from being foreign to the purpose of its institution, is entirely subservient to it. Every one admits that a bank may discount a note, unless it be specially restrained; but the argument here is, that it has no power to discount a note at a greater rate of interest than its charter allows; if it does, the note is void, because of the want of such power.

There is this distinction between the contract of an individual and of a corporation: "The former can do all acts and make all contracts which are not, in the eye of the law, inconsistent with the general good of society; the latter can make only such as are connected with the purpose for which it was created, and which are necessary, either directly or incidentally, to answer the end and object for which it was instituted." Ang. & Ames, 139.

With this difference, the acts of each should be viewed in the same light. In other words, if a corporation makes a contract in regard to a matter fairly within the scope of its charter, the construction should be the same as in the case of an individual. Upon another branch of the case, we have shown that a bank, except so far as exempted or restrained by the terms of *its* charter, is subject to the general laws of the land, precisely as a natural person. It remains to inquire what is the consequence, where a natural person exceeds the limits of a particular authority entrusted to him. Take, first, the case of a partnership, which more nearly resembles a corporation than any other. Each partner is the accredited agent of all, and as long as he acts in matters within the scope and objects of the partnership, all are bound; but if one make a contract entirely foreign to the purpose and object of the partnership, the rest are not bound. But suppose he make a contract embracing some matters within the scope and objects of the partnership, and others beyond such scope, is the whole contract

void, or only the latter portion of it?  We answer, only the latter part, and that the agreement as to the residue is good.  Wintle *et al. v.* Crowther, 1 Cromp. & Jer. Ex. Rep. 316; Bay. on Bills, 57.  The rule is the same in the case of agency, though this has been sometimes doubted.  Lord Coke thus laid down the rule: "Where a man doth less than the commandment or authority committed unto him, there the commandment or authority being not pursued, the act is void.  And, where a man doth that which he is authorized to do, and more, there it is good for that which is warranted, and void for the rest.  Yet both these rules have divers exceptions and limitations."  Co. Lit. 258.  This, however, is the general rule, and it is recognized by the ablest modern writers.  2 Kent's Com. 617; Story on Agency, 158.  Of course it cannot apply where the boundaries between the excess and the rightful execution are not distinguishable.  The cases of excessive appointments under powers for the purpose, which are holden to be void at law, though good in equity, seem to constitute exceptions to this rule.  The articles of partnership association, or the letter of attorney, form the rule of government in these instances, just as the charter does in the case of a bank.  The moment it is established that banks are included in the general terms of the statute regulating interest, all doubt and question are at an end. If the words of that statute were, that no person or bank shall take, &c. there would be no room to contend that the whole contract is void for want of power, any more than on account of usury; if banks are, by construction, within its terms, the result is precisely the same as if they were expressly named.  Indeed there is no reason for the application of a rule of construction to the contract of a bank, made in regard to a matter within the scope of its charter, different from that which governs an individual.  The cases, except that in 8 Ohio, according to our understanding, all treat them in the same way.  If a corporation does an act against the prohibitions of a statute, it is void; so of an individual: if it violates a statute, such as a law in restraint of banking, its contract is void; so of an individual: if it does an act foreign to the purposes of its institution, it is void; so in reference to a partnership: if it has power to a limited extent and goes beyond it, the excess may be avoided; so of an agent.  The almost

countless cases on the subject of taking more interest than is allowed by their charter, or the general law of the land, put them on the same footing with individuals, with the single exception of the case in Ohio. If the uniform testimony of courts and judges can settle any point, it is settled that the act of a bank, in taking excessive interest, is viewed precisely as the act of an individual.

The case in Ohio establishes a principle different from what is settled in any other that we have seen; and, as it has been strongly urged upon our notice, upon this point of want of power, it requires some examination at our hands.

The case is founded, as we conceive, upon a misapplication of principles. For example, here follows a portion of its reasoning, and that, too, which is the turning point of the decision. The court says: "for a corporation created for the purposes of contracting a railroad, or of acting as a library association, to carry on banking operations, and to claim to do it under its charter, would be absurd, unless the power so to do was expressly, or by implication, authorized in its charter. If an agent is restricted by the power received from his principal, if the legislature of the state cannot transcend the powers delegated in the constitution, much less can a corporation go beyond the charter by which it exists." Now these principles are all undeniable. If a corporation makes a contract entirely foreign to the purposes of its institution, as in case a railroad company or library association attempts to carry on banking, the act is void, simply because of a want of power in reference to the subject matter, unless there is some general law to cure it. But if the agent exceed his authority the act is not void, if the good can be separated from the bad, as we have already shown. If a legislature pass an act which transcends the constitution, it is void only for the excess, as has been often decided. The first principle adverted to, as to a contract foreign to the purposes of the institution, had nothing to do with the case before the court, because it was an act of banking done by a bank. The last was misapplied, because the act was only an exceeding of the power, which was not void, except for the excess. The court had already stated in the same case that by the law of Ohio the taking of usury by the bank did not prevent it from recovering principal and legal interest. That was, in our view, in ac-

cordance with all previous decisions, an end of the controversy, and the act of the bank to that extent legalized.   To hold otherwise is to allow to the bank the benefit of the general law, in one particular, and to deprive it of the same benefit in another.

The court in Ohio, in conclusion, rests its decision, as to the point of want of power, upon the case of Owens in 2 Peters. That case does not sustain the position.   The court, in the case of Owens, says in the passage already quoted, "the question then is, whether such contracts are void in law upon general principles?" ' The question of power or want of power in the bank, is not once alluded to; it is decided entirely upon general principles, and every case cited was between individuals, founded upon some contract against law, common or statute, or against public policy.   These do not go to show that the contract of the bank in that instance was void for want of power, but to place it upon the same footing with individuals.

It may be well here to remark, that the Kentucky statute on the subject of usury, in force at the time of the making of the note sued on, like the English statute of Ann, avoided all contracts infected with usury.   That the question as to power was not considered by the court, may be inferred from the circumstance, that in the case of Fleckner, in 8 Wheaton, the same court had decided that a violation of charter of the bank, in this very thing of taking more interest than was allowed, could only be reached by a proceeding on the part of the government; the defendant had nothing to do with it.   In the case of Owens this point is not alluded to, but in 9 Peters they say they deliberately adhere to it.   They adhere to the principle, not that the defendant might not set up usury as a defence where there was a usury statute against the contract, but that he should not set up in a collateral proceeding a violation of the charter; in other words, a want of power to make the contract.

That this is the doctrine established by these cases is still more manifest, because in the case of Wagoner, in 9 Peters, they make the case turn exclusively upon the question of usury, precisely as if the note had been given to an individual.   The case of Swayne is against the case of Owens, so far as it takes the statute of usury of Ohio into consideration; it is against it too,—at all events it is

against the case in 9 Peters,—on the point that a want of power can be inquired into in that collateral way. The Ohio case takes the principle which was, in 2 Peters, applied to a charter containing a prohibition to take more than six per cent. interest, and in which the statute law of the land produced no modification, and applies it to a similar charter, but in a state where the general law relieved the party from any loss beyond the excess of interest. It was a misapplication of the principle, and a misapprehension of the ground on which the other case rests. Regarded as a question of usury, the courts would consider of it, in an action between the parties to the contract; as a question of power, they refuse to take cognizance of it in a collateral way. We think, then, that Swayne's case, standing as it does alone upon this point, cannot be followed. It is entirely distinct from that large class of cases in which a corporation makes contracts entirely foreign to the purposes of its creation as indicated in its charter; these are void upon general principles.

The doctrine laid down in Fleckner's case, 8 Wheaton, has been followed by several of the most respectable courts in the Union. Chester Glass Company *v.* Dewy, 16 Mass. 102; Silver Lake Bank *v.* North, 4 John. Ch. 370; Ang. & Ames, 146 ; The Banks *v.* Poitoux 3 Rand. 143. A portion of the opinion of the court in this last case so well illustrates the point that I cannot forbear transcribing it. "It would be extremely inconvenient if every contractor with one of these banks could, for the purpose of avoiding his contract, institute the inquiry whether the bank had violated its charter. This case does not fall within the principle of Wilson *v.* Spencer, 1 Rand. 76. In that case an association of individuals dealt in a manner utterly prohibited by law, and a contract founded on those unlawful dealings was declared to be void. In this case the statutes do not prohibit the purchase of real property by the banks, but only limit the extent of such purchases; and the question whether they have or have not exceeded the limits prescribed to them, is not fit to be tried in this suit, and at the instance of this party."

I think, then, it may be safely concluded that this question of power does not interfere with our conclusion, and that when a bank discounts a note in its usual course of business, if it should

The Commercial Bank of Manchester *v.* Nolan *et al.*

commit usury it is subject to precisely the same law for so doing with an individual.

Usury has now ceased to be considered a crime. 1 Howard, 596, 600. It is unlawful to the extent that it is made so by statute, and no farther. If in this state a contract violates the statute, it may be enforced for the principal sum, incurring the loss of interest. The good may be severed from the bad, the legal from the illegal, and by the best decisions, recovery may be had in all such cases for the part which is good, the whole not being void. United States *v.* Bradley, 10 Peters, 360 ; Pigot's case, 11 Co. 27 ; Newman *v.* Newman, 4 M. & Selw. 66.

There is another feature of this case which should not be overlooked. The contract on the part of the bank is executed, and the opposite party is secured in the enjoyment of the fruits beyond disturbance. How then can he object the want of power? In England the rule that a corporate act to be binding must be under seal, is still rigidly adhered to, except, perhaps, in commercial transactions, and it cannot make a valid lease of lands unless under its corporate seal. If it make an executory lease not under its corporate seal, it could not be sued upon it, and therefore shall not sue unless it offers to perform, because of a want of entire mutuality. But if it has made such lease, and the other party has enjoyed the premises, the corporation may sue and recover. Mayor and Corporation of Stafford *v.* Till, 4 Bing. 75 ; Chit. Con. 221.

Another circumstance may be worthy of remark, though it has had very slight influence on our determination. It is that the charter of this bank, in regard to contracts having twelve months to run, contains no express prohibition against exceeding eight per cent. interest, and imposes no penalty. In this respect it differs from the case of Owens and of Swayne.

I have endeavored to show that the principle of want of power cannot be made to operate in this case. But even if mistaken in this, it cannot benefit the defendants in error. It is clear that the bank had the power under its charter to discount the note sued on, and to reserve eight per cent. discount, which is all that was done. If it had not the power to make the additional stipulation about the cotton and the domestic exchange, that is the part which fails for want of power. "Where a distinct limitation or appoint-

ment is made according to the power, and another distinct limitation or appointment is made, though in the same instrument, exceeding the power, the former is good even at law, and the latter will be held void." Sugden on Powers, 3d edition, 550–6; Story on Agency, 159. Thus, even in a class of cases which seem to form an exception to the general rule, as before stated, if the good may be separated from the bad, the sound from the unsound, it is done. By the application of this rule, the note in this case is sustained. But we desire the case to rest upon the general principles herein laid down, rather than upon any exception, and we think it may safely stand upon them.

Some apology may be necessary for the unusual length of this opinion. It may be found in the fact, that we were admonished that many other cases in this and the inferior courts awaited our decision. It was, therefore, not deemed sufficient to state the mere result of our inquiries, without also making known the process of reasoning by which we reached the conclusion.

On the whole, we are of opinion that a corporation is subject to the constitution and general laws of the land in force at the time of its creation and applicable to its condition, precisely as a natural person, except so far as its charter has conferred exemptions or imposed restrictions. The charge of the court below departs from this principle, in declaring that the contract if usurious is wholly void. The judgment is therefore reversed, and the cause remanded for a new trial, to be governed by the principles herein laid down.

Judgment reversed.

Judge TURNER concurred.

Mr. Chief Justice SHARKEY.

I was very much inclined to think, on the argument of this case, that the record did not present a contract which the law could pronounce usurious. Subsequent investigation and reflection have convinced me that I was not mistaken. I therefore entirely concur in the opinion on the first ground taken, that the contract was not usurious. In truth, there seems to be a doubt whether there was any contract for the reservation of domestic

The Commercial Bank of Manchester *v.* Nolan *et al.*

exchange. But, admitting there was such contract, it seems to have been viewed as a consideration for the trouble the bank would have in the transaction. It was a contract which might result in profit, or it might result in a loss of part of the principal, and falls within the scope of the authorities cited, which hold that such contracts, if not designed as a shift or device, are not usurious. Domestic exchange is a thing which is continually varying. There is no proof showing whether it was at a premium or a discount at the time of settlement or payment. For any thing that appears, the bank may have lost by the transaction. It is in proo that the bank reserved only legal interest on the loan; that the cotton was taken as collateral security, and that exchange between New York and Manchester, at the time the discount was made, was at par for specie; and there is no proof that exchange between the two places, at the time the credit was allowed for the amount of sales, was at a premium. Under such circumstances, I can perceive no ground for considering it to be a contract in which the bank, either directly or indirectly, reserved or contracted for more than the legal rate of interest. It is impossible to consider a transaction a device to cover illegal interest, which is just as likely to result in a loss of part of the principal as in a gain of interest.

Believing, then, that this contract is not usurious, I have not investigated the question as to what would be the effect on the whole contract, if it were so, and therefore give no opinion on that point.