## HALLETT v. ESLAVA, *et al.*

1. Previous possession of lands is sufficient evidence of title to authorise a recovery, but only in cases where there is no adverse documentary title.
2. A certificate of confirmation of title to lots in Mobile, issued by the Register and Receiver of the Land Office, under the act of Congress, is evidence of a good title in the grantee.
3. Such certificate of title, accompanied with possession, will overreach a title evidenced by a previous possession merely, though such possession be of fifteen years standing.
4. In trespass to try titles, a defendant may shew that a third person has a better title than the plaintiff, and it will be a sufficient defence.

MIGUEL DE ESLAVA, JEROME ESLAVA, JOAQUIM ESLAVA and THOMAS F. TOWNSLEY, brought an action of tresspass to try titles to recover possession of a certain lot of land in Mobile, and damages for the detention by Thomas L. Hallett, who had it in possession. At March Term 1828, of the Mobile Circuit Court, the cause was tried, and a verdict and judgment were obtained by the plaintiffs against Hallett the defendant, for the lot and $300 damages and costs. Hallett excepted to the instructions given by the Court on the trial, and sued his writ of error to this Court to reverse the judgment.

By the Bill of exceptions it appears, that the plaintiffs offered no documentary or paper title, but relied on a right under Don Miguel Eslava, their ancestor, under whom they claimed. They proved, that in 1803, the commandant of the Fort of Mobile caused buildings to be erected on the lot in controversy, and that about the year 1804, he told the carpenter who built the houses for him, that he had sold the premises to Don Miguel Eslava. There was no other evidence of a sale of the premises to him. The commandants of the Fort and Town of Mobile, continued successively to the number of four, as they succeeded each

JULY 1820.

Hallett
v.
Eslava, et al.

other in the command, to occupy the premises as their quarters, until 1813, when the United States took possession of Mobile, at which time General Wilkinson, under whom possession was taken, occupied the same as his quarters, during the time he stayed at Mobile. There was no evidence that any of the Spanish commandants had rented the premises of Don Miguel Eslava. It was proved however, that he had several times purchased lumber to repair the dwelling house, but he was at that time the public commissary, and also purchased lumber to repair the Fort and other public buildings; and it was a part of his duties as commissary, to furnish quarters to the commandants and soldiers. The plaintiffs also proved that General Wilkinson appointed a Lieutenant, to meet an officer of equal grade appointed by the Spanish commandant, and to receive from him the public property; and that the premises in dispute were not shewn or delivered as public property. After the change of Government, Don Miguel took possession of the premises by renting them to different tenants, and he remained in possession till 1819 or 1820.

The defendant claimed under the heirs of Robert Farmer, who were proved to be living, and for whom it appeared he had been put in possession by the Sheriff of Mobile county; and in support of their title, produced a certificate of a survey made for them, dated "Surveyor's Office, Land District East of the Island of New Orleans," dated eighth of May, 1824. This certificate was signed by Silas Dinsmoor, Principal Deputy Surveyor, and recites, that in conformity with a certificate No. 15, Report No. 7, from the board of commissioners at Jackson Court House, he had surveyed the lot in question for the heirs of Robert Farrar, and annexes a plat of it. It also recites that a claim for the same lot was set up by the heirs of Eslava. He further produced a certificate of confirmation issued by the register and receiver, dated "Land Office at Augusta, Mississippi, District of Jackson county, March 28th. 1827," certifying that in pursuance of the act of Congress passed the 8th. of May, 1822, entitled "an act confirming claims to lots in the town of Mobile, and land in the former Province of West Florida, which claims have been reported favorably upon by the commissioners of the United States," the claim of the heirs of Robert Farmer had been confirmed, and regularly surveyed as per the plat certified by S. Dinsmoor; and that they were, on application to the General Land Office, entitled to a Patent

for it. Upon this evidence, the Court charged the jury, that if they believed that the plaintiffs, and their ancestor under whom they claimed, had been in possession from 1804, up to 1819 or 1820, that it was such a possession as authorised the presumption of a title in them; and that the said certificate of confirmation of title in those under whom the defendant claimed, was not a paramount title to that of the plaintiffs. This charge is now assigned for error by Hallett.

ACRE, for the plaintiff in error.

ELLIOTT and CRAWFORD, for the defendants.

By JUDGE COLLIER. The facts shewn by the bill of exceptions require that we should express an opinion; first, upon the nature of the title of the defendants founded on previous possession: second, upon the legality of the certificate offered by the plaintiff: and third, whether the possession of documentary evidence of title gives paramount right.

Evidence of title to real property founded on and deduced alone from possession, is the most unsatisfactory and inconclusive of all other, by which title is made out. Possession cannot, consistently with reason and law, unless sanctioned by the length of time which the Legislature have prescribed as a bar to an action to try titles, give a right to lands, but can only be considered in a case thus circumstanced, as creating a presumption that the title is with the possession. It is believed that a plaintiff can only recover where such proof is not accompanied with, or countervailed by proof of title in another. The presumption which it creates may be destroyed in various ways, by shewing that the title was not with the possession, as that the possession was permitted, or that it was held against the consent of the person in whom the title is. This brings us to consider the second point.

By an act of Congress passed on the 8th. of May, 1822, entitled an act confirming claims to lots in the town of Mobile, &c. [a] when taken in connection with an act of the same date, entitled "an act supplementary to the several acts for adjusting the claims to land and establishing Land Offices in the District East of the Island of New Orleans,"[b] power is given to the Register and Receiver at Jackson Court House, Augusta, Mississippi, in default of commis-

[a] Land Laws 819.

[b] Land Laws 823.

JULY 1829.

Hallett
v.
Eslava, et al.

*a* Laws Ala.
248.

sioners specially appointed to confirm claims to lots in Mobile, derived under British or Spanish authority, and upon a claim being reported on favorably, they are authorised to issue a certificate of confirmation to the person entitled, setting forth the nature of the claim, and the quantity of the land allowed. The certificate seems to be sufficiently formal and to have been regularly issued.

By an act of the Mississippi Territory, *a* "all certificates issued in pursuance of any act of Congress by any of the boards of Commissioners, Register of a Land Office, &c. upon any warrant, &c. for any land in this Territory, &c. shall be taken as vesting a full, complete and legal title in the person in whose favor the said certificate is granted, &c. and the same shall be received in evidence as such in any Court in this Territory." The acts of Congress have authorised the issuance of the certificate. The territorial act just recited declares what fact it shall be taken to prove, and for that purpose has made it evidence. It now remains to consider the third point.

The certificate, it is declared by our statute, vests the legal title fully and completely in the grantee. Possession it has been said conveys no title in itself, but is evidence when uninterrupted for a long space of time, that the title is with the possession; the force of which presumption yields to documentary evidence. If then the possession of the ancestor was of a character to authorise the inference that the title was vested in him, that inference must yield to the strength of the title vested by the certificate in the heirs of Farmer. It is unnecessary for us to decide upon the legal effect of the certificate further than we have expressed ourselves. Its conclusiveness as evidence against all persons who claim adversely, or whether the facts and and suggestions on which it issues can be enquired into now, are topics which cannot be legitimately adjudicated in this case. We will however remark, that the method pursued under the direction of Congress, of examining and confirming, and rejecting the Spanish and British land claims, seems to have been sustained by the Supreme Court of the United States in *De La Croix vs. Chamberlain. b*

*b* 12 Whea.
599.

In the action of trespass to try titles, the plaintiff must recover upon his own title, and if he shall make out a *prima facie* case, it is competent for a defendent to shew a better title in a third person. It was therefore legal for the plaintiff to have defended himself behind the title in the heirs of Farmer. It is scarcely necessary to say any thing of

the proof of purchase from the Spanish commandant by the ancestor, as it seems not to have been regarded by the presiding Judge in his charge; we however think that *prima facie*, he had no right to sell. Could the fact of sale be made out by legal testimony, it would be proper to give evidence of a right to dispose of the property before the sale could be made availing, if at all. We are of opinion, from the facts appearing on the record, that the Court should have instructed the jury that the certificate offered by the plaintiff, overbalanced the presumption of title in the defendants founded on the possession of their ancestor.

Judgment reversed and cause remanded.

The CHIEF JUSTICE not sitting.