### THE STATE TREASURER *vs.* JOSEPH WEEKS.

WINDSOR,
*February,*
1832.

The statute of limitations does not run against the state, unless named in direct terms.

A declaration, alleging a tax granted by the *legislature* is well enough; that term being used in some sections of the constitution.

When a sheriff has neglected to execute two extents against different constables, the State treasurer may issue one extent against such sheriff for both neglects.

A declaration, alleging, that the treasurer issued his extent in due form of law, bearing date, &c., is sufficient, without averring it to be signed by him; the objection not being taken by special demurrer.

When a sheriff, who has neglected to execute an extent, is out of office, the extent against him may be directed to, and served by, the sheriff, who is in office at the time, and need not be directed to the high bailiff.

In an action on the case against a sheriff for an escape, such sheriff has a right, at common law, to show the property of the prisoner at the time of the escape, in mitigation of damages.

This was an action on the *case*, brought against the defendant as sheriff of the county of Franklin, to recover damages for his suffering one Shiveric Holmes, a former sheriff, to escape, when in prison on an extent for taxes, issued by said treasurer. The declaration set forth two taxes, assessed in two different years, alleging them to have been assessed by the *legislature*. It also set up a claim against Holmes for neglecting to collect of John H. Burton, constable of St. Albans, an extent against him for a portion of one of said taxes; and a claim for not executing an extent against Amos Town, first constable of Bakersfield, for a portion of said other tax—That the extent against Holmes was given out after he was out of office, to wit, on the 13th day of April, 1822, and was delivered to said *Weeks*, who was then sheriff of said county, and was directed to the sheriff, and not to the high bailiff; and that the defendant on the twelfth day of June, A. D. 1822, committed Holmes to prison by virtue of said extent, and forthwith suffered him to escape from said prison. This suit was commenced at June term, 1831, almost eight years after the escape. The defendant pleaded the general issue in the county court, and also the statute of limitations of six years. To this last plea there was a demurrer; and the plea was adjudged to be bad. On the trial of the general issue, the defendant offered to prove the poverty and total insolvency of Holmes, at the time of the escape, in mitigation of damages; and relied upon the statute relating to jails and jailors, &c., as giving this right to the sheriff. This testimony was ojected to by the plaintiff's counsel, and was rejected by the court. The plaintiff obtained a verdict; and the

WINDSOR,
*February*,
1833.

S. Treasurer
*vs.*
Weeks.

defendant filed exceptions to these decisions, and the cause was ordered to pass to this Court for a revision. And now, at this term, it was argued by counsel.

*Mr. Collamer, for the defendant.*—I. The first question in this case is, can the statute of limitations be pleaded to a suit, brought in behalf of the state treasurer? The plea is attempted to be put down on the ancient maxim, *nullum tempus occurrit regi*. In answer to which, it is contended, for the defendant, 1st. That this maxim in behalf of the crown was a personal one for security of rights and lands, and not a part of the prerogative as representative of the national sovereignty. 2nd. That, in England, the king is part of the supreme power, and not to be legislated out of his rights by a parliament to which he is not subject. In this state the treasurer and his claims are subordinate and inferior, and subjects of the legislature. 3rd. That the maxim is part of the *common law* as a system, and merely qualifies the maxims of that law, and applies not to a statute made in derogation of that common law, including this maxim. 4th. That the maxim cannot apply in this country, in many cases, is apparent, as in cases of *qui tam* prosecutions and crimes. 5th. That the legislature having made a statute broad enough in its words to include the case, and having excepted the state in relation to lands, and nothing more, it is to be taken, that they intended the state should, in other cases, have no privileges but such as were reserved to individuals; and the Court ought not afterwards by judicial legislation to interpolate another proviso on the statute.—7 *Dane*, 427. 6th. All the grounds, on which the policy of the statute is supposed to rest, apply equally to the state; that is, presumption of payment, loss of testimony, &c. 7th. The state has thought proper to secure itself against the effect of delay in another manner, for treasury claims, of which this is one. The treasurer is directed to proceed in a certain manner, and by a certain time, and is made chargeable on failure. This is to be presumed as so done, and, therefore, to be considered as the private claim of B. Swan, to which the statute applies as to any other man.

II. But, if this plea be insufficient, being demurred to, the next enquiry is, how is the declaration? as the demurrer attaches to the *first* fault. The defendant insists, that this declaration is insufficient for the following causes: 1st. The declaration states that the *legislature* granted a tax; when there is no such body in the state. 2nd. The treasurer joined two distinct delinquencies

WINDSOR,
February,
1832.

S. Treasurer
vs.
Weeks.

of taxes of different years, and against different constables, as committed by sheriff Holmes, in the same extent against him. 3d. It does not say the extent against Holmes was signed. 4th. It says, that, by virture of a certain statute, he issued this extent and directed it to the sheriff of Franklin county, &c. Now, that statute does not authorize him so to issue and direct; but it must issue to the high bailiff; and states what he shall suffer for neglect. This authority of the treasurer, being in derogation of the common law right, is to be strictly construed and pursued; and, if Holmes was unlawfully imprisoned, this action for escape can not be sustained.

III. There was, however, claimed for the plaintiff, on the trial of the general issue, a still more extraordinary exception from the statute; that is, an exception from the statute, which permits a sheriff, when sued for an escape, to prove the insolvency of the prisoner and the circumstances of the escape in mitigation of damages. 1st. This is attempted to be sustained on the ground, that the statute containing it does not provide for treasury collections; when, at the same time, it is the very statute on which *this suit* is founded; for the one regulating collections in the treasury department would never have authorized a commitment, by a sheriff, of a former sheriff. 2nd. There is no exception for the treasurer in the statute, and there is no reason for it. It cannot be claimed on the ground of exemption from the statute of limitations, which is, that no *laches* are to be imputed to the government. 3rd. All the reasons of the law apply to the treasurer. The only legitimate object of imprisonment for debt is, to enforce a disclosure, and rendering up of property actually possessed by the prisoner. If he has none, imprisonment is wrong, and the state or its treasurer have no right to convert the law into an engine of oppression, and render imprisonment for debt a punishment. 4th. It may perhaps be said, that this was not a bailable claim; but the statute makes no such distinction, as has been fully settled; and, indeed, the very reason that it was not bailable, constitutes a cause for protecting the sheriff in the exercise of his humanity.—*Brayton's Rep.* 37, *Wait* vs. *Dana*; 1 *Vt. Rep.* 423, *Middlebury* vs. *Haight.* 5th. It may, perhaps, be said the escape was *voluntary.* But to this the same answer may be made, and the same decision cited, as last quoted. 6th. The privilege of the sheriff, to give in evidence the insolvency of the prisoner and the circumstances of the escape in mitigation of damages, exists at *common law*: for the right to recover the whole debt exists only when

28

WINDSOR,
*January,*
1832.

S. Treasurer
*vs.*
Weeks.

*debt* is brought for escape, on the statute of Westminster 2nd ; and, therefore, our statute is merely declaratory and unnecessary ; and, consequently immaterial, whether it extends to the treasurer or not.—2 *Dane,*653, 647, 648.

*Mr. Marsh, for the plaintiff.*—The general questions arising in the pleadings, are, *first,* Whether the statutes of limitation run against claims in favor of the state, it not being expressly named. *Second,* Whether the statute authorizing the sheriff, in an action for an escape, to give the situation and circumstances of the prisoner in evidence in mitigation of damages, applies to judgements and commitments in favor of the state. If the Court is of opinion with the defendant, on the first point, judgement must be for him. If the opinion of the Court is for defendant in the second point *only,* a new trial will be granted ; otherwise, judgement will be entered on the verdict.

1. It has been established as a rule, that all prerogatives must be for the good of the people ; otherwise, they ought not to be allowed by law.—1 *Show.* 75 ; 5 *Bac. abr.* 487. Prerogative includes all the rights and privileges the king—the government—have, as head or chief of the commonwealth. Prerogative seems to be a right, or privilege, which the crown, or government, claims and exercises for the common good. One of those prerogatives is, that generally the crown, or government, is not bound by statutes, unless particularly named.—11 *Co.* 68. To this, however, there is some restriction ; and it is laid down, that when an act of parliament is made for the public good, the advancement of religion and justice, or to prevent injury and wrong, the king *is* bound by the act,though not particularly named.–5 *Bac: abr.* 559. But, where it is general, and thereby any prerogative right, title or interest, is divested or taken from the king, in such case he is not bound, unless the statute is made by express words to extend to him ; and where the king's right is expressly saved, it is *ex abundanti cautela :* accordingly the king is not bound by statutes of limitations.—*Id.* 561, 562. *Vigilantibus non dormientibus jura subveniunt,* is a rule for the subject : but *nullum tempus occurrit regi,* is the king's plea ; for there is no reason, that he should suffer by the negligence of his officers, or by their contracts or combinations with the adverse party.—*Hard.* 24. It is believed that all the prerogatives and rights, &c., of the king of England,belong to the government of this country, in all cases where they are applicable, and can be exercised for the good of community ; and

this maxim, it was said by *Mr. Justice Story*, in the *U. S.* vs. *Kirkpatrick*, 9 *Wheat.* 735, is founded not on any extravagant notions of prerogative, but upon great public policy. This applies particularly to the principle, that the government is not bound by statutes of limitations. If the statute is ever permitted to run, it must be through the negligence or connivance of some of the officers of government, by which the government ought not to be bound : and if no *laches* can be imputed directly to the government itself, surely the mere *laches* of its agents ought not to be imputed to their principal. It is clear that, in Great Britain, the king, in other words, the government, is not bound by the statutes of limitations, and the same reason will apply here, both to the state and to the United States, as remarked by *Judge Story*, in the case above cited.—5 *Bac. abr.* 561. The general principle is, that *laches* is not to be imputed to the government ; and this maxim is founded not in the notion of an extraordinary prerogative, but upon great public policy. The government can transact its business only through agents, and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of *laches* can be applied to its transactions. This applies as well to such *laches* as are so long continued as that the statute will have run, as to others ; and there is not the same reason for applying the statute to the public, as to private demands. There is not the same presumption of payment. Presumptions of payment do not arise in case of the government, where all payments are placed on the records, which must be kept by the officers of government.—1 *Pet. Rep.* 326 ; 2 *U. S. Stat.* 70, 34 ; 3 *Pet. Rep.* 29, 277. No decisions can be found of the United States courts, because the U. S. have no general statutes of limitations, which would be likely to affect their own claim ; but the subject is left to the operation of the state laws ; and no case can be found, in which it is decided, that the state is not bound by its own statute of limitations. Nor can any case be found in which it has been decided that the state was within the statute of limitations. The conclusion must be, either that no one thought of setting up such pretence, or that the states generally have excepted themselves out of the operation of their own statutes of limitations. And if so, it was not probably supposed they would be bound without such exceptions ; but such provision was inserted *ex abundanti cautela.*—5 *Bac. abr.* 559. Will it be contended that *squatters* on the lands belonging to the

WINDSOR,
*February,*
1832.

S. Treasurer
*vs.*
Weeks.

WINDSOR,
*February*,
1832.

S. Treasurer
*vs.*
Weeks.

state, can hold by fifteen years' possession. Congress often pass acts, giving the right of preemption to actual possessions ; but no one ever thought they could hold against the U. S. by possession. There is now a bill before congress, to indemnify a man who had been in possession thirty or forty years, and cleared up nearly all his land, and who was likely to be turned off by running anew the lines between certain Indian reservations ; and the committee who have reported in his favour never once thought of telling him to hold by possession, by way of indemnity. In the case, *U. S. vs. Buford*, it is expressly laid down, that, to any action for money had and received, in the name of the United States, the statute of limitations would be no bar.—3 *Pet. Rep.* 29. Our statute adopts the common law of England in cases where it applies. The common law is, that the king—the government—is not bound by statutes generally, unless named, and especially by the statute of limitations ; and no reason is perceived why this part of the common law does not apply to our own government.

2. The *second* point, whether the defendant should have been admitted to show that the prisoner, Holmes, whom he permitted to escape, was insolvent at the time of his commitment, and so the plaintiff entitled to recover nominal damages only, we think equally clear. It is abundantly evident that the statute was framed, and intended, to regulate the proceedings of private individuals only, and that it never was intended to extend to the state. It will be observed that the same statute makes provision for poor debtors swearing out of jail. But the legislature has thought fit, by a special exception in the 15th section, to say, *that no person shall be admitted to the oath, who shall be imprisoned on a demand in behalf of the state.*—*Stat.* 220, sec. 12 ; 223, sec. 15. And to provide another board in *Stat. no.* 15, on the same subject, for state debtors to arrive at the same privilege.—*Stat.* 234. Now it is incredible, that the legislature should use all this caution with respect to admitting state debtors to the oath, and yet permit the sheriff to discharge them at his discretion, and be responsible for nominal damages only. For it has been decided, that this provision extends to voluntary as well as negligent escapes. The legislature has always exerted the utmost vigilance in its care of the public monies ; and it cannot be supposed, that it ever was intended to put the debts due the state, at the mercy of the sheriff, or the arbitrary discretion of a jury in assessing damages for an escape. The whole of these statutes, for they all make but one system, though thirty in number, all treat of suits,

WINDSOR,
February,
1832.

S. Treasurer
vs.
Weeks.

judgements, executions, notices and other proceedings, between common and individual debtors and creditors, and surely were never intended to extend any further. No. 7, for instance, provides for tendering real and other property by a debtor, while in jail, to his creditor ; directs the mode of appointing appraisers, &c. &c., and the words are general,and,literally understood,would embrace debtors owing the state. But can it be admitted for a moment, that the legislature intended to subject the officers of state to the vexation of attending to such business, and the state to the loss, which must be the necessray consequence. Surely it will be more safe to believe, and to adopt the construction, that, when the legislature mean to tie their own hands, they will say so in terms, and that when the state is not named, or from the nature of the case, necessarily included in a general act, that it is not affected by its provisions. If there are cases in which statutes, concluding in general terms,without naming the state,do bind the state, it must be in cases only, where the public good requires that it should be so, and is not to be admitted as a general rule. No reason can be assigned why state debtors, who happen to be committed, should be permitted to escape, and thus avoid their debts, while all others must apply for redress to the legislature. The legislature, in relation to state debtors, has always holden the staff in their own hands, to inforce their claims or to discharge them at pleasure, whether they were rich or poor ; and no relief, be the hardship what it might, has been supposed to exist, but by application of their clemency.

HUTCHINSON, C. J., *pronounced the opinion of the Court.*—
The plea of the statute of limitations, to which the plaintiff demurred, was overruled by the county court. The demand appeared to have lain sufficiently long to be barred, if comprised within the statute. But we consider the statute barring civil actions, applicable *only* to suits between individuals. The state is not named as being bound by it. The sections, which provide a bar to prosecutions for crimes, are made to bar the state, because the state is prosecutor. Certain *qui tam* actions are barred by the first section of the statute, when sued by a common informer, to a given period ; and a longer time is given to the state, when no person appears to prosecute. This is all plain ; and it appears reasonable to conclude, that the law makers, thus definite in so many cases, did not intend to include the state and bar their rights, in cases not named at all ; especially, when it must have been

Windsor,
February,
1832.

S. Treasurer
vs.
Weeks.

well understood at the time of making this statute, what construction the English courts put upon statutes of similar import.

There having been a demurrer to this plea of the statute of limitations, the defendant's counsel have gone back to the declaration, and urged several objections to its validity. 1st. That the law making power is therein termed, the *legislature*. This term is frequently used in common parlance, and once, if not more, in the constitution, to designate that body. We think this no good objection to the declaration. 2nd. The declaration sets forth an extent against Holmes for two distinct delinquencies, occurring in two different years. This objection is fortified by presenting the difficulties that would arise in casting the burthen upon the right persons among Holmes' bail, had the remedy been sought of them in any event. This, it is urged, rendered the extent against Holmes void, and his imprisonment illegal. But we find, on inspection of the declaration, that it describes the sum due from each constable with such particularity, that no more difficulty could arise, in the apportionment among bail, than if a suit were brought with two counts, in which the sheriff ought to be made good by different deputies. The true sum could be assertained as easily as in any other cases of apportionment. 3rd. It is objected, that the declaration does not allege, that the extent was signed. This is not inserted with entire particularity. The averment is, that the treasurer, on such a day, &c., " issued his extent in due form of law, dated, &c." This is not sufficiently defective to be adjudged bad, unless on special demurrer. The defendant's fourth objection to the declaration is, that it describes the extent against Holmes as having been directed and delivered to the defendant, as sheriff, when, by the statute, it ought to have been directed to the high bailiff, and delivered to him to serve. It is contended, that a precept, thus misdirected, gave the defendant no authority to hold Holmes a prisoner. The general statutes provide, that all precepts shall be directed to the sheriff or his deputy, &c. ; and wherever the sheriff is interested, or is a party to the suit, the precept shall be directed to the high bailiff. And, when the sheriff shall be in prison the high bailiff shall be keeper of the prison. The statute, regulating the treasury department, directs the treasurer to issue his extents against constables, and direct and deliver them to the sheriff ; and, when the sheriff has committed a neglect, and an extent issues against him, the treasurer shall direct and deliver that extent to the high bailiff; and fixes a penalty upon the high bailiff if he neglects his duty in the

Windsor,
*February,*
1832.

S. Treasurer
*vs.*
Weeks.

case. The letter of this last statute would seem to support this objection: but we perceive by the declaration that Holmes, though he was liable to an extent for a default committed while he was sheriff, yet he had ceased to be sheriff at the time when the extent issued against him. In all such cases, the object of the general laws can only be answered, by directing precepts to the sheriff, who is in office, against the man, who had before held the office. Otherwise, the sheriff and high bailiff might each become keeper in chief of the prison, when the bailiff should commit the former sheriff. This would present an absurdity, and a direct contradiction to that part of the statute, which makes the acting sheriff keeper of the jail unless he is himself in prison. The uniform and necessary practice has always been, to direct to the sheriff all writs against his predecessor. The peculiar expressions of this statute in the treasury department, are applicable to the cases where the sheriff, who neglects his duty, and becomes liable to an extent, remains sheriff when the extent issues against him. When a different case occurs, the general statutes may be applied to it. Such is the present case. The defendant was sheriff, and uninterested, when the extent came against Holmes, who was not sheriff, for a neglect of duty while he was sheriff. This objection is overruled

There yet remains a question, raised on the exception to the exclusion of evidence, offered by the defendant, to show the poverty of Holmes when he escaped. We consider the statute, giving this privilege to the sheriff, applies only to individual suitors, and not to the state. All the provisions for the privilege of the poor debtor's oath ; the notice to the creditor, or his attorney, if living within the county; the necessity of the creditor's appointing an agent in the county when he resides out of it; the legislature's making a separate provision for debtors to the state ; these all indicate, that the provisions, now claimed under the statute, were not intended to affect the state ; that the state was not thought of at all in this enactment. But this right of showing the poverty of the prisoner is a common law right. The state or any other suitor, bringing an action upon the case, complains of an injury, and claims reasonable damages. And the defendant, in all such actions, has a right to prove what will convince, that the plaintiff has sustained less damages than he asks for. In the present case, the plaintiff demands the whole sum, for which Holmes was imprisoned ; because he could not have been liberated from his imprisonment until he paid it. This hold upon him is lost by the

WINDSOR
*February,*
1832.

S. Trersurer
*vs.*
Weeks.

escape. The defendant says, the plaintiff's right thus to hold his debtor in prison, was worth but little or nothing ; for he was so destitute of property that he could have paid nothing, had he continued in prison during life. This testimony ought to have been admitted, upon common law principles, and the plaintiff might show, in his turn, that Holmes was not thus destitute of property : then the jury might have given the plaintiff such damages, as he had sustained by reason of the escape. Because this testimony was excluded by the county court, their judgement is reversed, and

A new trial is granted.