## Doe ex Dem. KENNEDY'S EXECUTORS *vs.* TOWNSLEY'S HEIRS.

1. If the *second* proviso to the *third* section of the act of Congress of the 8th May 1832, "supplementary to the several acts for adjusting the claims to land and establishing land offices in the District east of the Island of New Orleans," be regarded as a limtation upon the provisions of that section, a donation claimant can take nothing under it, until the quantity of land to which he asserts a right has been first ascertained.

2. To invest a donation claimant, under the act of Congress of the 8th May 1832, with a title to his settlement, it is necessary that the land should have been surveyed, and its location and quantity ascertained, as provided in the *fourth* section of the act.

3. Statutes of limitations do not run against the Government, unless it is expressly named; nor against its grantee, until the Government has divested itself of the title.

4. To entitle a party to insist upon the statute of limitations, his possession must have been notorious, uninterrupted, and under an adverse claim of title for the period prescribed by the statute; and these are questions of fact for the determination of the jury.

5. According to the law in force in Mobile, whilst under the dominion of Spain, prescription must rest on "good faith and just title." A possession commenced by intrusion is deficient in both.

6. Can the title of the Government be divested by prescription?— QUERE.

Error to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

This was an action of ejectment by the plaintiffs against the defendant in error to recover a lot of land in the city of Mobile. The plaintiffs deduced title under the act of Congress of the 5th May 1832, confirming to Joshua Kennedy a lot of land, of which the one in controversy is a part, a patent issued to him in accordance with that act in 1837, and the will of

said Kennedy. The defendant proved that the family of one Durett lived forty-eight years ago on a square of four acres, which was enclosed by a picket fence, and the improvements upon which looked to be very old; that Durett's family occupied the premises till 1823, when the lot mentioned in the declaration was sold off to one Acre, and conveyed to him by deed; and that said Acre and those claiming under him have been in possession, ever since, of the lot so conveyed. The defendants also introduced in evidence the 3d vol. of American State Papers, and read certain portions thereof, which are sufficiently recited in the opinion of the court, and proved that the parties had no other land claims in Mobile. This was all the evidence in the case.

The court charged the jury, that if they believed from the evidence that the defendants and those under whom they claimed had been in the peaceable and uninterrupted possession of the land in controversy for sixty years, they should find for the defendants.

The plaintiff's counsel requested the court to charge the jury—

1. That if they believed from the evidence that the defendants and those under whom they claimed set up no right under the British, French or Spanish Governments to authorise their possession, the plaintiffs ought to recover on their title.

2. That if they believed that the persons, under whom the defendants claimed, had no grant from the British, French or Spanish Governments, that they could not defend under their possession.

The court refused to give either of these charges, and instructed the jury that no grant was requisite to sanction their title under the length of possession.

To each of the charges given, and to the refusal to charge as requested, the plaintiffs excepted, and now assign them as error.

CAMPBELL, for the plaintiffs:

1. No claim of title is of any avail to the defendants, so long as the land in question was held by the Government: 4 How. S. C. Rep. 169, 185; 7 Wend. 125; 4 Bibb, 554.

2. The title of the defendants under the donation contained

in the Act of 1822. 1 Clark. Land Laws, 820, § 4, required a survey and location before it became complete, and could not be ascertained on a location. 5 Howard S. C. R. 10, and 28; 4 do. 449–464; 4 Howard's S. C. Rep. 169; 8 Missouri, 88. The government of the United States retained the power to confirm and perfect an inchoate Spanish title until the title of the donation claimant was perfected by a survey and location. The consummation of the plaintiff's title by a patent, is the time from which the statute of limitations commences to run as between these parties. Cases above cited, also 3 Howard's S. C. R. 32.

3. A conveyance by the heirs of Durett to Acre, in 1823, before the perfection of their title by survey and location, conferred no better title than they had in the bond upon Acre,— Acre only became an assignee of their equitable claim on the government to have the claim perfected by a survey; an unauthorised location by the heirs of Durett is a nullity. 4 How. S. C. R. 421.

4. The court charged, that length of possession alone, *without* claim of title, would create a bar. This charge is erroneous. 3 Wend. 337; 1 Digest N. Y. Reports, 33.

Lockwood, for defendants :

1. The patent introduced by plaintiffs, is not an ordinary one. It is simply a release of any claim the United States may have to the land contained in it, and expressly reserves the just claim of any and all persons to said land obtained from the United States, or from the British, Spanish or French Governments.

2. A direct grant from the Crown may be presumed on an uninterrupted possession for sixty years—2 Aust. 614; 1 Dow. Par. Ca. 322–323; or a prescriptive possession of Crown Lands for forty years—3 Dow. Par. Ca. 112. It is laid down as clear law that grants, letters patent, records, and even Acts of Parliament may all be presumed from length of time and continued possession. See 2 Dun. & East. 151, 158, 159; 3 McCord, 261; 6 East. 215; Rex v. Montague, 4 Bain. & Cress. 598; Lopez v. Andrew, 3 Mann & Pel. 329, note, a.; Schouber v. Jackson, *ex dem.* Bogart, 2 Wend. 13. Forty years adverse possession with some very slight additional cir-

cumstances, were put to the jury in North Carolina in 1801, as the basis on which they might presume a grant from the Crown, and they found one. *Den ex dem.* Hanks v. Tucker, Taylor, 157. The same in South Carolina—Allison, lessee v. Saunders, 1 Bog. 26. Proprietory grants, under certain circumstances, are presumed. They frequently derive their force and efficacy from that vigilance which the law guards ancient possessions, which sooner than they should be disturbed, presumes that they had, in contract, a righful commencement. Per Archer, J., in Beall's lessee, v. Lynn (Maryland) 6 Har & Johns. 361; Gitting's lessee v. Hall, 1 Har. & John. 14, 18. A patent or grant of land from the State which is matter of record has been presumed, after length of possession. Archer v. Sadler, 2 Hen. & Munf. 370; Dem on Hawkins v. Tucker, Taylor, 157. In an action of ejectment in which the plaintiff claimed under the great seal of the State, a prior grant of the defendant was presumed from uninterrupted possession. Allston, lessee, v. Saunders, 1 Bay. 26. A recovery which is a conveyance of record may be presumed. Hasledon v. Brodney, 2 Term, 159. What circumstances furnish a presumption of a grant, is a question of law, and it is the duty of the court to give an opinion, whether the facts proved will justify the presumption. Stoener v. Lessee of Whitman, 6 Binney, 416 ; Sumner, et al, v. Child, 2 Conn. 607. When a tenant at will was allowed to claim the presumption against the landlord's heirs, the tenant possessed 47 years after the landlord's death, and it was held, that the jury might presume a restoration of possession to the heirs, then an ouster, and so a title. Camp v. Camp, 5 Conn. 291, 301–2 and *seq.* Presumptions do not proceed on a belief that the thing presumed has actually taken place. Grants are frequently presumed, as Lord Mansfield says, merely for the purpose and from the principle of quieting possession. Presumptions of grants may be used as an instrument to subserve the cause of justice, when from length of time, it is probable that the evidence of title is lost, or when it would be unreasonable to disturb a possession of long standing. Sumner v. Child, 2 Conn. 623. It is not necessary that the jury should presume who is the grantor, or what is the particular kind of grant. There can be no difficulty about a grantor, or grantee, or the forms of a grant.

They may presume such a grant as will quiet the possession. Lord Kenyon said, that he would presume not only *one*, but *one hundred* grants, to support such a long possession. Lord Ellenborough said he would presume *any thing* to support such a long possession. 11 East. 283; Sumner v. Child, 623, 2 Conn.

COLLIER, C. J.—The evidence of title adduced by the plaintiffs is confessedly sufficient to authorise them to recover, unless the defendants have shown a superior right, or such a possession as will avail them as a bar under the statute of limitations. To make out their defence, the defendants rely upon report No. 1, made to the Commissioner of the General Land Office by the Register and Receiver at Jackson Court House, Mississippi, under date the 11th July 1820, and the Act of Congress of the 8th May 1822, " supplementary to the several Acts for adjusting the claims to land, and establishing land offices in the districts east of the Island of New Orleans." The report is professedly " a list of actual settlers in the district east of Pearl river, in Louisiana, prior to the 3d of March 1819, who have no claims derived from either the French, British, or Spanish Governments;" and in this list we find the following: " No 44, Reps. of Durett, present claimant—Louis Durett, original claimant. April 1820—Date of present settlement. March 1790—Date of original settlement—Lot below Mobile, where situated." The first section of the Act of Congress enacts, that all claims to land derived from the British or Spanish authorities, reported to the Commissioner of the General Land Office by the Registers and Receivers at St. Helena and Jackson Court House, &c., which in their opinion are valid, shall be recognised as valid. By the second, it is provided that all claims reported as aforesaid, founded on orders of survey, &c., derived from the Spanish authorities, &c., shall be confirmed, &c. The third section is as follows: " That every person, or his or her legal representative, whose claim is comprised in the lists or registers of claims reported by the Registers and Receivers, and the persons embraced in the lists of actual settlers, or their legal representatives, not having any written evidence of claim reported as aforesaid, shall, when it appears by the said reports, or by the said lists, that the land

claimed or settled on, had been actually inhabited or cultivated by such person or persons in whose right he claims, on or before the fifteenth bay of April, one thousand eight hundred and thirteen, be entitled to a grant for the land so claimed or settled on, as a donation : *Provided*, that not more than one track shall be thus granted to any one person, and the same shall not contain more than six hundred and forty acres ; and that no lands shall be thus granted, which are claimed or recognised by the preceding sections of this act, or by virtue of the confirmation under an act entitled " An act for adjusting the claims to land, and establishing land offices in the districts east of the Island of New Orleans," approved on third day of March, eighteen hundred and nineteen : *And provided also*, that no claim shall be confirmed where the quantity was not ascertained, and report made thereon by the Registers and Receivers, prior to the twenty-fifth day of July, one thousand eight hundred and twenty." By the fourth section, Registers and Receivers, except in relation to perfect titles, as recognised, &c., are authorised to direct the manner in which the lands shall be located and surveyed, having regard to the laws, usages, &c., of the Spanish government, and also to the mode adopted by the government of the United States, under an act of Congress of the third of March 1803, entitled, &c: Where claims may conflict or interfere, the Registers and Receivers, may decide between the parties, &c. The fifth section directs that patents shall be granted for lands confirmed by the act in the same manner as under previous enactments to which it is a supplement ; and the sixth provides, " that to every person who shall appear to be entitled to a tract of land under the second and third sections of this act, a certificate shall be granted by the Register and Receiver of the district in which the land lies, setting forth the nature of the claim and the quantity allowed."

If the second proviso to the third section be regarded as a limitation upon it, and restricts grants as donations to cases where the quantity of the land was ascertained and reported previous to the 25th July 1820, then it is clear that the defendants can claim nothing under the report and act of Congress; for it does not appear that the quantity to which the representatives of Durett asserted a right, has been ascertained. The

want of precision in the employment of language in different parts of the enactment, the fact that the proviso to the second section uses the terms "confirmed or granted," as if they imported the same meaning, and the consideration that if "confirmed" was used in an exclusive or technical sense, then the second proviso should have been a part of the second section, inclines us to think, that the proviso was intended as a limitation not only upon the second, but upon the third section also. See Public Lands, Ins. & Op., part 2d, (edit. 1838) No. 672, p. 717.

Let it be conceded however, that this construction of the act is indefensible, and we are of opinion that the report of the Register and Receiver and the third section do not invest the defendants with a legal title. Something more was necessary to consummate the grant to the persons under whom they claim. The land should have been surveyed as provided by the fourth section, and its location and quantity ascertained, that the certificate contemplated by the sixth, should be issued by the Register and Receiver. Unless its location was defined as directed by the act, the donation would be ineffectual, and could not operate as a grant—the indefiniteness of the object would prevent it; hence it was necessary to the vitality and efficacy of the bounty of Congress that the identity of the land to which it was intended to apply, should be particularized and distinguished. In Blake v. Doherty, 5 Wheat. Rep. 359, it was determined that the thing granted must be so described as to be capable of being distinguished from other things of the same kind; but the grant itself need not contain such a description as without the aid of extrinsic testimony, to ascertain precisely what is conveyed. So in Chinometh v. Haskell, 3 Pet. Rep. 96, it was decided that a grant must describe the land to be conveyed, and the subject granted must be identified by the description in the instrument. Where course and distance are the only guides, these, though unsafe, must be used. A Spanish grant was made for "six miles square of land" in Florida, "at the place called Dunn Lake, upon the river St. John," for the purpose of establishing machinery to be propelled by water: *Held*, that the description was too vague and indefinite for any survey to be made; that "actual manual possession has never been required to

give title, but such identity must be established as to enable the courts to ascertain with *reasonable* certainty where the land lies; as was held in Hanson's case, (15 Peters) and others. And this may be shown either from the face of the grant, or by a legal survey made by the surveyor general in conformity to the grant, during the time he had power to make such surveys." The U. States v. Lawton, et al, 5 How. Rep. 10. This decision was made with reference to the 8th article of the treaty of 1819, which provides, " that grants of land made by his Catholic Majesty, or by his lawful authorities, should be ratified and confirmed to the persons in possession of them to the same extent that the same grants would be valid if the territories had remained under the dominion of his Catholic Majesty." See also citations by the plaintiffs in error.

As an additional reason why a location and survey should be made to entitle the claimant to a donation under the third section, the first proviso declares that not more than one tract shall be granted to any one person, that no tract shall contain more than six hundred and forty acres; and that no lands shall be thus granted which are claimed or recognised by the preceding sections, or by confirmation under a previous enactment. Unless the land is identified, how can it be known, what is its quantity, and whether it is not excepted from the influence of the act, so as to enable the Register and Receiver to issue a certificate to the claimant. From this view it results that the evidence of title exhibited by the defendants was not superior to that adduced by the plaintiffs. We will therefore inquire whether the ruling of the Circuit Court in the charge given, and in the charges refused, can be supported.

It may be regarded as a settled principle that a statute of limitations does not run against the State, unless it is expressly named. Ang. on Lim. 34, *et seq.*; The State v. Arlege, 2 Bailey's Rep. 401; Lindsey v. Miller, 6 Pet. Rep. 666; Weatherhead v. Bledsoe, 2 Tenn. Rep. 352; People v. Gilbert 18 Johns. Rep. 227; State Treasurer v. Weeks, 4 Verm. Rep. 215; Stoughton v. Baker, 4 Mass. Rep. 522; Nimmo v. Commonwealth, 4 Hen. & Munf. Rep. 57; Bayley v. Wallace, 6 Serg. & R. Rep. 245; Munshoner v. Patton, 10 Id. 334; Commonwealth v. Baldwin, 1 Watts' Rep. 54; Wallace v. Miner,

6 Ham. Rep. 366; Bledsoe v. Doe, 4 How. Rep. (Miss.) 13; Parmilee v. McNutt, 1 Smedes and M. Rep. 179; Parks v. The State, 7 (Miss.) Rep. 194; Harlock v. Jackson 3 Brev. Rep. 254; Wilson v. Hudson, 8 Yerg. Rep. 398; Wright v. Swan, 6 Port. Rep. 84. In Jackson v. Vail, 7 Wend. Rep. 125, a patent for a lot of land was granted in 1820, to a revolutionary officer, in pursuance of an act of the Legislature of that year; although the act declared that the patent should have like effect, as to the title to the lot, as if it had been issued in 1790, it was held that possession under a claim of title for thirty-five years, could not be set up as adverse, to bar the right to recover in an action of ejectment by the heirs of the patentee. The possession of the defendant previous to 1820, when the State divested itself of the title, could not be taken into the estimate under the plea of the statute of limitations; for it was only from that time the statute began to run. To the same effect, see Wilson v. Hudson, *supra ;* Thomas v. Hatch, 3 Sumn. Rep. 170 ; Jourdan, et al, v. Barrett, et al, 4 Howard's Rep. U. S. 169.

To entitle a party to insist upon the statute of limitations his possession must have been notorious, uninterrupted, and under an adverse claim of title, for the period prescribed by the statute. Ang. on Limitations, 400, *et seq.;* Hapgood v. Hart, 4 Verm. Rep. 155; Martindale v. Troop, 3 Har. & McH. Rep. 244 ; Monroe v. Doe, 7 Ohio Rep. 262 ; Hawk v. Seuseman, 6 Serg. & R. Rep. 21 ; Plumer v. Brown, 8 Metc. Rep. 578 ; School District v. Blakeslee, 13 Cown. Rep. 227; Griffith v. Dickens, 2 B. Mun. Rep. 20; Moore v. Webb, Id. 282; Price v. Evans, 4 B. Munr. Rep. 386 ; Zeller v. Eckhart, 4 How. Rep. U. S. 289; Smoot v. Wathen 8 Miss. Rep. 524; Jackson v. French, 3 Wend. Rep. 337. Adverse possession is a question of fact for the determination of the jury under the usual instructions by the court. Hall v. Dewey 10 Verm. Rep. 593 ; Zeller v. Eckhart, *supra.*

To constitute prescription according to the law of Spain, by which rights were adjusted during the time his Catholic Majesty was in possession of Mobile, " good faith, just title, and capacity of the thing for the purpose, and of the person who prescribes, are necessary; as also continued or uninterrupted possession for a determinate time." By *good faith,* we are to

understand that the possessor believed that his right to the thing was valid at the time his possession commenced and so continues until the period of prescription elapses. "Just title consists in the cause or consideration by which possession of the thing is obtained, being one of those by reason of which dominion is acquired, as purchase, gift, inheritance, &c." 1 White's Recopilacion, 91 to 97, 346 to 349; 2 Id. 82 to 86, 736, *et seq*. Now, conceding that lands could be held by prescription against the King of Spain, and that the time necessary to bar a recovery had elapsed while his Catholic Majesty was in possession of the country within which the premises in question are situated, and still the possession of Durett is not shown to be such as will sustain a prescription. *Prima facie* it commenced by intrusion, and was defective in two essential elements, viz: *good faith* and a *just title.*

We are now brought to consider, whether the possession of the defendants and those under whom they claim, since the United States government was substituted for that of Spain, will sustain the plea of the statute of limitations. The defendants, it must be observed, do not rest their pretensions upon a grant or other evidence of title emanating from the Spanish authorities, which is valid *per se*, or which moral or political justice required the United States to recognize or confirm. It is expressly affirmed by the report of the Register and Receiver, that the original claimant and his representatives occupied merely as settlers, having no claim derived either from the French, British, or Spanish Governments. Admitting that their possession may have been adverse to the U. States, upon an assertion of exclusive title, (which however it seems is a question that should have been submitted to the jury instead of being decided by the court,) yet it is clear, that if the prescription was not complete when Spain ceded the territory by the treaty of Ildefonso, it did not continue to run against the United States, after it became the proprietor by the treaty of Paris. Foster & Elam v. Neilson, 2 Pet. Rep. 253; Garcia v. Lee, 12 Pet. Rep. 511, and citations above, to show that statutes of limitations do not apply to a State, unless it is specifically named.

The report of the Register and Receiver, and the act of Congress of 1822, we have seen do not *per se* invest the de-

fendants with a title to any specific tract of land, and that in the absence of evidence to show a location and survey, the act of Congress of 1832, confirming the title, under which the plaintiffs claim, and the patent, consequent thereupon, establish such a legal title as entitles the plaintiffs to recover.

It is however insisted that it must be intended from the length of time the possession under which the defendant claims, has been continued, that it commenced, or has been sanctioned by a grant under Spain. Conceding that his Catholic Majesty could be deprived of his domain by prescription, and it has been already shown that the facts do not establish the prescription according to the provisions of the Spanish law. The prescription being imperfect, it is difficult to perceive any ground upon which a grant can be presumed. Knowing, as we are bound to know, the modes in which the Spanish authorities disposed of the royal domain in Louisiana, we could not presume that the occupant had a perfect title; at most, it could only be intended that he was authorised to take the possession under a title either perfect or imperfect; the latter of which would be invalid, without the confirmation of Congress. But do not the facts repel the idea that Durett the original claimaint, derived any title from the local authorities of Spain. If he ever had any such evidence to sustain him, why did not his representatives vindicate their claim upon that ground before the Register and Receiver, instead of appealing to the mere bounty of the government?

We are aware that in a controversy between individuals in respect to land, a grant has been often presumed from uninterrupted possession for a time sufficiently long for the statute of limitations to operate a bar; but in a case where prescription will not avail, can such a presumption be indulged? There is not the slightest pretence for infering that the title relied on by the defendants ever received the sanction of the United States, otherwise than by a donation which we have seen does not appear to have become operative. The possession of the defendants being unsupported by documentary evidence of a title, or by prescription, there is nothing shown to bar the plaintiff's right to recover. See Callender v. Sherman, 5 Ired. Rep. 711.

We have seen that the statute of limitations did not begin

to run previous to 1832, when the title under which the plaintiffs' claim was confirmed, and the bar was not completed previous to the institution of the present suit. The ruling of the Circuit Court cannot therefoere be sustained—its judgment is consequently reversed, and the cause remanded.

DARGAN, J., not sitting.