## Doe ex dem. CHASTANG vs. DILL.

1. When a claimant of lands situated within the Territory of Lousiana has appeared before the commissioner appointed under the authority of the Act of Congress of April 12, 1812, and presented his petition claiming title by grant from the Spanish Government, but produced no written evidence of title, the petition alleging that the same had been lost or carried away by the Spanish authorities, and the commissioner reports favorably to his claim, which is afterwards confirmed by the Act of Congress of May 8, 1822, the title of the claimant is founded upon the report of the commissioner and the Act of Congress confirmatory thereof, and not upon any supposed Spanish grant.

2. When the plaintiff in ejectment proves that the ancestor of his lessors appeared before the United States commissioner and presented his claim to certain lands within the Territory of Louisiana, embracing the lands in controversy, that the commissioner reported favorably to his claim, that it was afterwards confirmed by the Act of Congress of May 8, 1822, and that the register and receiver, under the authoriy of the act. afterwards issued a certificate of confirmation to him, he shows sufficient evidence of a legal title to support the act of ejectment.

ERROR to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

THIS was an action of ejectment, brought by the plaintiffs to recover of the defendant a lot of land in the city of Mobile, situated on the North side of Dauphin street, between Royal street and the river. The plaintiffs, to show title to the *locus in quo,* introduced as evidence the petition of Bazel Chastang, the executor of John Chastang, deceased, addressed to the commissioner of the United States, appointed to ascertain and record claims to land in that part of Louisiana lying east of Pearl river, in which he claimed, in behalf of himself and the other legatees and devisees of said decedent, a lot of land described as follows : " Lying in the town of Mobile, bounded by Rue Royal, that is, Royal street, and the river, and on the upper side of Rue Conception, fronting one hundred and fifty-five feet on Rue Royal and two hundred and eighty feet on Rue Conception." In the petition it is also stated that the petitioner believed the lot had been granted to his father, John Chastang, the testator, but that the written evidence of said grant had been lost or carried away by the Spanish authorities, but that the said testator had had uninterrupted possession of said lot for thirty-two or three years, and therefore prayed that he might be confirmed in his claim to said lot. They also introduced the evidence presented to the commissioner, showing the possession of their father ; also his will devising the land to them after the death of his friend and companion, Louisa, to whom he devised the same for life. They further introduced the report of the commissioner upon their claim, which is in the following language : " Report No. 11. Register of claims to lands in the District East of Pearl river, in Louisiana, founded on private conveyances which have passed through the hands of the commandant, but which are founded, as the claimant supposes, on grants lost by time or accident. No. 4. By whom claimed, Bazel Chastang ; original claimant, John Chastang ; quantity claimed in feet, front 145, depth 281, area 40,745 ; where situated, Mobile ; cultivation and inhabitation, from 1782 to 1813 ; " also, the remarks of the commissioner upon this and similar claims, which are as follows : " Though the original grants upon which the preceding claims are founded have been lost, yet it is conceived that the claims

Doe ex dem. Chastang v. Dill.

to such lots as were inhabited and cultivated under the Spanish government, or such as were built upon by the permission of the Spanish authorities, ought to be confirmed." Signed "William Crawford, commissioner." The plaintiffs also introduced a transcript from the land office at St. Stephens, showing that a certificate had issued to them as for a confirmed claim, under the third section of the act of Congress of the 8th of May, 1822, showing the number of the certificate, the number of the claim, the original and present claimant, and also the quantity confirmed, corresponding in amount with the petition and report of the commissioner; also a transcript from the Register of Locations, from which it appears that a warrant of location had been issued, and the claim ordered to be located so as to not interfere with the claims of Henry Baudain or that of Piere Lucien, and then follows a diagram showing the location of the plaintiff's claim and also those of Henry Baudain and Piere Lucien. There was also parol evidence showing that John Chastang, in the year 1782, was in possession of a lot at the corner of Royal and Conception streets, now called Dauphin street, and had occupied it for many years, and that he and others under him had occupied it until his death in the year 1812. There was a conflict in the testimony as to the extent of the lot, some witnesses testifying that it extended to the river, and was partially covered by the water at high tides, whilst others testified that it was subject only to be reached by the water at extraordinary high tides, and that between the lot and the river, there was a low flat waste, usually wet, and some places covered with stagnant water, but elevated above ordinary high water mark. The witnesses agreed that John Chastang had enclosed the lot with a picket fence, and that the fence extended as far as the lot could be cultivated, but that the fence did not extend to ordinary high water mark, and most of the witnesses said that the lot sued for was not within the lines of said picket fence. It was admitted that the lot sued for was about one hundred and sixty feet from Royal street, on the North side of Dauphin, and within the limits of the claim as presented to the commissioner by Barzella Chastang, and also within the limits of that claim as laid down in the official survey, the form of which is given by an exhibit to the bill of exceptions.

The defendant, in support of his claim, produced in evidence

Doe ex dem. Chastang v. Dill.

the third volume of the American State Papers relating to the public lands, and read that portion of the 398th page, relating to the claim of Carman Trazee, being claim No. 2, in the report of the commissioners, the substance of which is, that Carman Trazee claimed under William Plumbly, a lot on the North side of Dauphin street, being seventy-two feet deep by forty feet, and which was inhabited and cultivated from 1813 up to 1819 by the claimant, and those under whom he claimed, which was recommended for confirmation; and also introduced evidence showing that William Plumbly was in possession under a lease from William Pollard, in the fall of 1813 or 1814, and that in the year 1814, he sold portions of the land which he held under Pollard by lease, to various persons, and a portion of the *locus in quo* to one Shaffer, who died, and that Plumbly executed a deed to his widow, who intermarried with Carman Trazee, in whose favor the report of the commissioners above described was made. The defendant also proved that he had acquired by purchase the rights of Carman Trazee. To show an outstanding title in another, the defendant produced a Spanish title to Henry Baudain, his application to the commissioners to have it recognized and confirmed, the report of the commissioners confirming it, its subsequent location and survey, and a patent thereupon issued to the said Baudain, all of which are referred to as part of the bill of exceptions, but are not attached thereto. The plaintiffs then proved that the claimants under the Baudain title had brought suit against the defendant, but had been defeated on the ground of the statute of limitations, and that they had not been in possession of the land since the year 1815, and that the lot had been held by the defendant, and those under whom he claimed, adversely to those claiming under the Baudain title, since that time. Upon this evidence, the court instructed the jury; 1st, that the title of Baudain was not a valid and subsisting title, and need not be regarded by the jury. The court further charged, that the plaintiff's claim was founded on a grant lost by time or accident, and the fact so recognized was conclusive; that by the act of Congress, Carman Trazee was to be entitled to a grant as a donation, and that this act was to be regarded as confirming legal titles to both classes of claimants, and under the act, the plaintiff's title was the best, if his boundaries included the *locus in quo*. The court further instructed

Doe ex dem. Chastang v. Dill.

the jury, that the act of Congress confirmed the title of the plaintiffs as it originally stood, and that they were not to regard the confirmation and claim of the plaintiffs as evidence of its limits, but that the plaintiff must satisfy the jury, that the *locus in quo* was within the limits of the old Spanish grant, and if they were not satisfied of this fact, that the plaintiffs could not recover. The plaintiffs excepted to the instructions of the court, except that portion relating to the Baudain title; and a verdict being returned in favor of the defendant, they prosecute a writ of error to this court.

JOHN A. CAMPBELL, for plaintiff in error.

PHILLIPS, *contra* :

The act of 1822, in reference to complete grants, uses the words, " are hereby recognized." In each of the remaining sections the words are " shall be confirmed ;" and also the words, " all the grants and confirmations provided to be made, by this act." And the 5th section provides for a survey and location, and also for a decision upon conflicting and interfering claims.—Boatner v. Ventriss, 4 Cond. La. R. 654 ; Garcia v. Lee, 12 Pet. 512.

It is evident that under this and similar acts, the title is not divested out of the United States until the issue of the patent. —Mayor v. Eslava, 6 Ala. 740 ; Hallett & Walker v. Hunt, 7 ib. 903 ; Kennedy v. Townsley, 16 ib. 243 ; Boatner v. Ventriss, 4 Cond. La. 654 ; Farmers' Heirs, 11 Ala. 1042 ; Bagnoll v. Broderick, 13 Pet. 448, 450 ; Wilcox v. Jackson, 13 ib. 516 ; Public Land Laws, vol. 2, p. 212, 712, opinions and instruction.

It is not denied that Congress may pass a bill by force of an act without a patent. Such was the case.—Strother v. Lucas, 12 Pet. 411 ; Gregnon v. Astor, 2 How. 344.

The number of feet stated in the abstract presented to Congress, gives no location of the lot, and the act of Congress does not adopt it. It is not conclusive against him, *a fortiori* not conclusive in his favor.—Mayor & Aldermen v. Eslava, 6 Ala. 741 ; Hallett & Walker v. Hunt, 7 ib. 901 ; McCay v. Dillon, 4 How. 446 ; LeBois v. Bramell, ib. 449.

The act of the State authorizes the holder of such a title to maintain an action thereon, and for this purpose considers the

28

legal title vested. But this would not authorize a recovery when defendant also claims title under the government. It would do no more than oust a trespasser.—Lewis v. Gognette, 3 S. & P. 196 ; Ryder v. Innerarity, 4 ib. 14.

But as between two incomplete titles derived from the government, it is not competent for the State to declare which one should prevail, or what is their relative dignity. This matter is within the exclusive jurisdiction of Congress.—13 Pet. 450 ; Wilcox v. Jackson, ib. 506.

The case then shows that by the same act of Congress, the government agreed with the plaintiff and defendant that it would confirm them in their respective claims, and by the terms of that act it reserves to itself the right to survey them, and if found conflicting, to decide between them. A decision by the State court would be a clear usurpation over the government lands.

The plaintiff therefore had no title as against the defendant, and the charge was more favorable to him than the law warrants, and the court will not therefore consider the error assigned.— Farmer's Heirs, 11 Ala. 1049.

The document offered was no survey as required by the act of Congress. It was a mere extract from a map of the city, executed by the surveyor, without any foundation on any act of Congress, and if it had been regarded as a survey, would have shown the plaintiff out of court, as the location of the Baudain title left the party only 140 feet. As to this map, see 2 Pub. Land Laws 841, instruction and opinions.

DARGAN, C. J.—The government of the United States having acquired the territory of Louisiana by the treaty concluded at Paris on the 30th of April, 1803, it became necessary to ascertain the lands which had been granted to individuals in the ceded territory by the different sovereigns, through whose hands it had passed. Until this was done, it could not be known what lands were private property, nor what public domain. To do this, to distinguish the private from the public land, commissioners from time to time were appointed, whose duty it was to examine into all claims presented to them, to make a record of such claims, and report them to the Secretary of the Treasury, together with their opinion as to their validity. It was also made the duty of all claimants to land to present their claims

Doe ex dem. Chastang v. Dill.

to the commissioners, to be examined and recorded in the manner and within the time prescribed by the several acts, and the consequence of their neglect was declared to be, that the claim should never afterwards be recognized or confirmed by the United States, nor should any grant, order of survey, deed, conveyance, or other written evidence, which should not be recorded as directed in said acts, ever be considered or admitted as evidence in any court, against a grant derived from the United States. William Crawford was appointed commissioner for the district lying between the Pearl and Perdido rivers, under the authority of the act of the 25th April, 1812, (see Land Laws, vol. 1, 606,) and before him Bazel Chastang appeared and presented his claim, on behalf of himself and the other devisees of John Chastang, his father. It is alleged in his petition that the lot lies in the city of Mobile, bounded by Rue Royal and the river, on the upper side of Rue Conception, now known as Dauphin street, fronting one hundred and fifty-five feet on Rue Royal, and two hundred and eighty-one feet on Rue Conception. It is also stated that the petitioner believed that the lot had been granted to his father, but that the written evidence of said grant had been lost or carried away by the Spanish authorities, and that his father had had uninterrupted possession of the lot for thirty-two or three years. The applicant offered as evidence of his claim, to the commissioner, the will of his father, John Chastang, by which he devised the lot to his "friend and companion, Louisa," during her life, and after her death to the lessors of the plaintiff. He also proved by the depositions of two witnesses, that the testator had possessed and enjoyed the lot, as stated in his petition, but offered no grant or other written evidence, showing title in the testator.

At this stage of the plaintiff's title it may be well to consider what title did the applicant present to the commissioner? What title did he show as against the government of the United States, in the testator, through whose will he claimed? All will at once admit, that he stood at the mercy of the government, without any legal title whatever. The possession of the testator, and the idea or possibility that the Spanish authorities may have granted the lot to him, the evidence of which was lost, might very well form a reason or an inducement why the government of the United States should grant a title to the applicant, but such evi-

dence showed no title in the testator that could avail him as against the government, or one deriving title from the United States. The only evidence of title in the testator, if indeed it could be called evidence, was the quiet possesion of the lot for thirty-two or three years. This evidence would avail nothing as against a patentee of the government, or one deriving title from the United States.—Kennedy's Ex'r. v. The Heirs of Townsley, 16 Ala. 239.

The plaintiffs must therefore rely, as in fact they do, upon the report of the commissioner, and the act of Congress of the 8th of May, 1822, confirmatory thereof, as the source of their title; and to the extent that they can show title under this act, they have title without any regard to the boundaries of the supposed Spanish grant. We must therefore look to the commissioner's report, and to the act of Congress confirming it, to ascertain the character and extent of the plaintiffs' title. The commissioner reported the claim as one founded on a private conveyance that had passed through the office of the commandant, but recommended its confirmation on the ground that it had been possessed and cultivated by the testator from the year 1782 until the year 1812. His report gives the dimensions of the lot as described in the petition, but not its boundaries. On the 8th day of May, 1822, Congress passed an act entitled " an act confirming claims to lots in the town of Mobile, and to lands in the former province of Louisiana, which claims have been reported favorably on by the commissioner," the third section of which is in the following language : " That all claims in the town aforesaid, reported as aforesaid, and contained in the reports of the commissioners, and of the register and receiver acting as commissioner, founded on private conveyances which have passed through the office of the commandant, or other evidence, but founded, as the claimant alleges, upon grants lost by time or accident, and which ought, in the opinion of the commissioners, to be confirmed, shall be confirmed in the same manner as if the titles were in existence. *Provided*, that in all such claims, when the quantity claimed is not ascertained, no one claim shall be confirmed for a quantity more than seven thousand two hundred square feet."

The fifth section of the act authorizes the registers and receivers to direct the manner in which all claims to land confirmed

by the act shall be surveyed, and also to decide between all claims interfering or conflicting with each other.

Under the provisions of this act the register and receiver issued to the plaintiffs a certificate of confirmation, and also a warrant of survey, by which the surveyor was directed to locate the plaintiffs' claim so as not to interfere with the claims of Henry Baudain or Piere Lucien. The plaintiffs also introduced a diagram, or plat, of said lot, taken from the map of the city of Mobile, which was approved of by the Surveyor General and deposited in the office of the register and receiver at St. Stephens, which shows that the plaintiffs' lot had a front on Dauphin street of about one hundred and thirty-two feet, but there was no other evidence that the claim was located or surveyed under the authority of the warrant. This is, in substance, the written evidence of the plaintiffs' title, and it is insisted that they failed to show such a title as will support the action of ejectment. We are, however, constrained to hold otherwise. In the case of Hallett v. Eslava, (2 Stewart, 115,) the plaintiff's title was derived under the same act of Congress, and he offered in evidence a certificate of confirmation issued by the register and receiver in pursuance thereof, and the only question was, whether the plaintiff had offered such evidence of legal title as would support the action of ejectment. It was held sufficient under our act of the Legislature, passed in 1812.—Clay's Dig. 341. This decision has never been overruled, but on the contrary, has been affirmed in several subsequent cases.—See 3 Stewart & Por. 105 ; also Lewis v. Gognette, ib. 180 ; Ryder v. Innerarity, 4 ib. 14 ; Eslava v. The Heirs of Farmer, 7 Ala. 543. Under the influence of these decisions we must hold that the title shown by the plaintiffs is such as must prevail at law, unless in the defence a better title was shown by the defendant. We, however, think it unnecessary at this time, to examine the title introduced by the defendant, for, under the instructions of the court, it became unnecessary for the jury to consider of any other fact than this, whether the *locus in quo* was within the limits of the supposed Spanish grant. This instruction evidently made the Spanish Government the source of the plaintiffs' title, and the quantity to which they were entitled to depend upon their old Spanish grant. But it is manifest that they offered no evidence of a written grant from the government of Spain, and

it is equally clear that their only source of title is the act of Congress confirming the commissioner's report, to which we have referred. Nor is it material to inquire, in what manner that act gives title to the plaintiffs, that is, whether it be considered as a statutory grant, or as an acknowledgment on the part of our government that Spain had granted the lot to the ancestor of the plaintiffs, and thus giving them title as it were, by way of estoppel. In whatever mode it may be considered that the plaintiffs acquired title, one thing is certain—they acquired it under the act of 1822, and not from the King of Spain. They therefore have the quantity this act gives them, and no more, without regard to the supposed boundaries of a Spanish grant. We are fully sustained in this view by two recent decisions of the Supreme Court of the United States, to wit, the cases of Menard's Heirs v. Massey, (8 How. 293,) and Bissell v. Penrose, (ib. 317.) We come, therefore, to the conclusion, that the court erred in charging the jury that they must find for the defendant unless they were satisfied that the *locus in quo* was within the limits of the plaintiffs' old Spanish grant. As the questions raised on the defendant's title are not presented in such a manner as requires us now to decide them, we shall postpone their consideration until they are directly presented, and in such a manner as will enable us to pronounce a judgment upon the merits of his defence.